This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                                    **NO. 29,699**

**KENNETH DAVIS,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**J. Richard Brown, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

   Defendant Kenneth Davis appeals his convictions for contributing to the delinquency of a minor, selling or giving alcoholic beverages to a minor, and

attempted selling or giving alcoholic beverages to a minor. Defendant raises four issues on appeal: (1) whether the district court erred in excluding evidence of Defendant's character for the safe and moral treatment of children; (2) alleged errors in the jury instructions given on attempt crimes; (3) double jeopardy; and (4) ineffective assistance of counsel. We hold that any error in the district court's exclusion of testimony about Defendant's character for the safe and moral treatment of children was harmless. Based on an erroneous jury instruction, we also vacate Defendant's conviction on Count 4 for attempted selling or giving alcoholic beverages to a minor. Given our disposition of Count 4, we need not address Defendant's double jeopardy argument. Finally, we conclude that Defendant has failed to make a prima facie showing of ineffective assistance of counsel.

**BACKGROUND**

At the time the events occurred that gave rise to the criminal proceedings in this case, Defendant was twenty-three years old and living with a woman and her seventeen-year-old son, Cody. Cody brought another teenaged boy and three girls, between the ages of twelve and fourteen years old, to the home he shared with his mother and Defendant. The teenagers testified that Defendant bought them alcohol and hung out in Cody's bedroom with them, singing songs about sex. Two of the girls engaged in fellatio with Cody and one had intercourse with him. They testified that

Defendant coached Cody while he had intercourse with one of the girls and that he grabbed Cody's wrist, manipulating Cody's hand on the girl's breast. After the minor girls reported the incident to their parents and authorities, Defendant was arrested and charged for his alleged involvement in the incident. The jury convicted Defendant of contributing to the delinquency of a minor (CDM), selling or giving alcoholic beverages to a minor (SGAM), and attempted selling or giving alcoholic beverages to a minor (attempted SGAM). This appeal followed.

**DISCUSSION**

**I.    Exclusion of Character Evidence**

Defendant contends that the exclusion of testimony about his character for treating children in a safe and moral way was error. In New Mexico, a defendant may introduce character evidence if (1) the evidence is indicative of a trait of character; (2) that character trait is "pertinent;" and (3) the evidence is in the proper form of reputation or opinion testimony. Rule 11-405(A) NMRA. We review the district court's decision to admit or exclude evidence for abuse of discretion. *State v. Martinez*, 2008-NMSC-060, ¶ 8, 145 N.M. 220, 195 P.3d 1232. A district court abuses its discretion when it exercises discretion based on a misunderstanding of the law. *State v. Elinski*, 1997-NMCA-117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. However, when the district court makes "a categorical interpretation of law, not dependent on

the facts of the particular case, in concluding that evidence . . . is inadmissible . . . [,] the proper standard for review of that legal conclusion is de novo." *Martinez*, 2008-NMSC-060, ¶ 11.

In this case, Defendant argued in the district court that he should be able to ask his three character witnesses whether they thought he had a good or bad character for treating children in a safe and moral way. Defendant contended that such evidence was admissible under Rule 11-404(A)(1) NMRA, which states that, although character evidence is generally inadmissible to prove an action in conformity therewith, "[i]n a criminal case, evidence of a pertinent trait of character [may be] offered by an accused, or by the prosecution to rebut the same[.]" The district court excluded the evidence, stating that it understood Defendant's argument, but that this character evidence was not the same as other types admissible under Rule 11-404. The district court then restricted the character inquiry to Defendant's general character as a moral and law-abiding citizen. Defense counsel informed the court that he did not want to ask the three possible character witnesses about this general character trait. Defense counsel later elected to ask only one of the three possible character witnesses about Defendant's character as a moral and law-abiding citizen, and the one he did ask responded that Defendant had such a character.

On appeal, Defendant contends that other jurisdictions have recognized the moral and safe treatment of children or other comparable attributes to be character traits under evidentiary rules like New Mexico's Rule 11-404. *See Thomas v. State*, 669 S.W.2d 420, 421, 423 (Tex. Ct. App. 1984) (good character for the safe and proper treatment of young children); *Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. Crim. App. 2002) (same); *People v. McAlpin*, 812 P.2d 563, 576 (Cal. 1991) (in banc) ("normalcy in . . . sexual tastes" (internal quotation marks omitted)); *State v. Cunningham*, 82 N.W. 775, 779 (Iowa 1900) ("humane and kindly disposition towards children" (internal quotation marks omitted)); *State v. D.B.S.*, 700 P.2d 630, 637-38 (Mont. 1985) ("an honest man and a good parent who would not injure his child"), *overruled on other grounds by State v. Olson*, 951 P.2d 571 (Mont. 1997); *State v. Anderson*, 686 P.2d 193, 204 (Mont. 1984) (orthodox sexual mores); *State v. Workman*, 471 N.E.2d 853, 861 (Ohio Ct. App. 1984) (excellent with children). *But see Hendricks v. State*, 34 So.3d 819, 822-23 (Fla. Dist. Ct. App. 2010) (holding that the defendant's character for sexual morality was inadmissible where the defendant was being prosecuted for sexual battery on a child less than twelve years of age because "whether one secretly molests children or does not would not be openly exhibited to the community" (internal quotation marks and citation omitted)), *cert. granted*, 49 So.3d 746 (Fla. 2010).

Assuming without deciding that the district court erred in excluding evidence of Defendant's character for the safe and moral treatment of children in this case, we nevertheless conclude that the error was harmless. Because the alleged error in this case involves an evidentiary ruling, we employ the non-constitutional standard for the harmless error analysis. In *State v. Barr*, our Supreme Court clarified the boundary between non-constitutional and constitutional error for the purpose of harmless error analysis. 2009-NMSC-024, ¶¶ 52-53, 146 N.M. 301, 210 P.3d 198. With respect to the non-constitutional standard, the *Barr* Court stated:

> [W]here a defendant has established a violation of statutory law or court rules, non-constitutional error review is appropriate. A reviewing court should only conclude that a non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict.

*Id.* ¶ 53.

The *Barr* Court applied a non-constitutional harmless error analysis to the erroneous admission of a videotaped statement in violation of the New Mexico Rules of Evidence, *id.* ¶ 58 and, since *Barr* was decided, our appellate courts have consistently applied a non-constitutional standard where the error concerns a violation of statutory law or court rules, such as an evidentiary ruling by the trial court. *See State v. Wilson*, 2011-NMSC-001, ¶¶ 30, 39, 149 N.M. 273, 248 P.3d 315 (applying non-constitutional harmless error analysis after assuming that the trial court improperly admitted opinion testimony in violation of Rule 11-702 NMRA); *State v.*

6

*Branch*, 2010-NMSC-042, ¶¶ 14, 15, 148 N.M. 601, 241 P.3d 602 (employing the non-constitutional standard for harmless error analysis because the error was an evidentiary error involving a violation of Rule 11-404(B)); *State v. Johnson*, 2010-NMSC-016, ¶ 43 n.3, 148 N.M. 50, 229 P.3d 523 (noting that if the defendant had raised a Rule 11-404(B) challenge and if the court were to determine that the evidence was admitted in error, the error was harmless under a non-constitutional error analysis); *State v. Torrez*, 2009-NMSC-029, ¶¶ 26, 33, 146 N.M. 331, 210 P.3d 228 (applying non-constitutional harmless error analysis to the erroneous admission of expert testimony in violation of Rule 11-403 NMRA); *State v. Marquez*, 2009-NMSC-055, ¶ 20, 147 N.M. 386, 223 P.3d 931 (determining that non-constitutional harmless error analysis is appropriate where there was "improper admission of . . . scientific testimony [in violation of] the New Mexico Rules of Evidence"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ___ N.M. ___, ___ P.3d ___; *State v. Tom*, 2010-NMCA-062, ¶ 16, 148 N.M. 348, 236 P.3d 660 (applying non-constitutional harmless error analysis to an erroneous evidentiary ruling), *overruled on other grounds by Tollardo*, 2012-NMSC-008.

Consistent with *Barr*, a constitutional harmless error analysis is appropriate in cases where an erroneous evidentiary or procedural ruling implicates the defendant's constitutional rights. *See, e.g.*, *State v. Aragon*, 2010-NMSC-008, ¶¶ 35, 37, 147

N.M. 474, 225 P.3d 1280 (applying constitutional harmless error analysis where the erroneous admission of hearsay reports violated the defendant's right of confrontation), *overruled on other grounds by Tollardo*, 2012-NMSC-008. In this case, we are unconvinced by Defendant's bare contention that we should apply a constitutional harmless error analysis. As our Supreme Court stated in *Barr*, "[c]onstitutional error implicates our most basic, and most cherished, individual rights," 2009-NMSC-024, ¶ 51, and is appropriate "[w]here the defendant has established a violation of the rights guaranteed by the United States Constitution or the New Mexico Constitution." *Id.* ¶ 53. That is not the case here. Defendant fails to give any explanation of how the exclusion of character evidence in this case establishes a violation of a constitutional right.

The dissent attempts to make Defendant's argument for him by claiming that the district court deprived Defendant of the right to present a defense and that this deprivation rose to the level of constitutional error. While we agree that the deprivation of a defense can amount to constitutional error, the district court here did not preclude Defendant from presenting a defense that bolstered his credibility. The court ruled that Defendant could ask his character witnesses about his character as a moral and law-abiding citizen. Therefore, even if we assume that the district court's exclusion of character evidence in this case was an evidentiary error in violation of

Rule 11-404(A)(1), we conclude that this case falls firmly within the non-constitutional standard for the purpose of our harmless error analysis.

Thus, we analyze whether there is "no reasonable *probability* the error affected the verdict" in this case; if so, the error was harmless. *Barr*, 2009-NMSC-024, ¶ 53 (emphasis added). "[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence presented at trial, that it is reasonably probable that the jury's verdict would have been different but for the error." *Id.* ¶ 54; *see* ¶ 51 (noting that the harmless error standard for non-constitutional errors is lower than the harmless error standard for constitutional errors); *see also id.* ¶ 54 (observing that "the reasonable probability standard requires a greater degree of likelihood that a particular error affected a verdict").

We turn now to apply this analysis to the facts of this case. After the parties filed their briefs in this case, our Supreme Court reexamined our harmless error jurisprudence in *Tollardo*, 2012-NMSC-008. Although *Tollardo* left intact the analysis in *Barr* clarifying the difference between constitutional and non-constitutional standards for harmless error analysis, *id.* ¶ 36, the Court overruled the *Moore* three-part factor test previously employed in our harmless error case law. *Tollardo*, 2012-NMSC-008, ¶ 38. The Court held that "a review of the particular circumstances in each case, rather than mechanical application of a multi-factor test,

9

must guide the inquiry into whether a given trial error requires reversal." *Id.* ¶ 2. The Court instructed that reviewing courts should "evaluate all of the circumstances surrounding the error," including an "examination of the error itself, which . . . could include an examination of the source of the error and the emphasis placed upon the error." *Id.* ¶¶ 43, 57 ("[D]etermining whether an error was harmless requires reviewing the error itself and its role in the trial proceedings, and in light of those facts, making an educated inference about how the error was received by the jury."). The Court also indicated that evidence of a defendant's guilt separate from the error cannot be the "singular focus" of a harmless error analysis, but that this evidence "may often be relevant, even necessary, for a court to consider, since it will provide context" for understanding the role the error may have played in the trial proceedings. *Id.* ¶ 43.

Here, the State's case in chief consisted of testimony from Cody and all four other minors who were at the residence during the incident that led to the criminal proceedings against Defendant. In addition, the parents of the minors and officers involved in the investigation testified for the prosecution. The State played taped interviews of Defendant during the testimony of one of the police investigators. About midway through the State's case in chief, the State called to the stand one of the character witnesses listed on Defendant's witness list, who testified that he was a

10

good friend of Defendant and that Defendant had told him following the incident that he had bought alcohol for the party and then left Cody's residence before anything happened. During cross-examination, the witness testified that he had known Defendant for three to four years, that Defendant had lived in the witness's home for nearly a year, and that the witness had children. Defense counsel then sought to ask whether the witness knew "Defendant's character for the safe and moral treatment of children." As stated earlier, although the district court determined that it would not allow this question, the court informed defense counsel that he was permitted to ask the witness about Defendant's character as a moral and law-abiding person. Defense counsel decided against asking about Defendant's character in this regard and then did not cross-examine the witness further. The State also called Defendant's second character witness to the stand, and defense counsel again elected not to ask this witness about Defendant's character as a moral and law-abiding person. Later, during the defense case, Defendant's girlfriend testified about Defendant's character as a moral and law-abiding person.

It is significant that the district court permitted defense counsel to ask about Defendant's character for being moral and law-abiding. While the excluded evidence was certainly more specific, Defendant could have presented the same general defense and challenged the credibility of the five prosecution witnesses who were present at

11

the residence during the incident by presenting evidence that Defendant was known to have a moral and law-abiding character. A person who is known to act morally presumably acts morally toward everyone, including children. The testimony permitted by the court—that Defendant was a moral and law-abiding citizen—subsumes the excluded evidence—that Defendant has a good character for the moral and safe treatment of children—such that the excluded evidence likely would not have made any difference. Moreover, based on the offers of proof made, defense counsel could have established that the first character witness had children and had observed Defendant around those children; similarly, the second character witness's testimony would have established that he had observed Defendant around children during rodeos. Thus, the specific circumstances surrounding the source of the error in this case reveal that the court gave Defendant an alternative approach to offering character evidence in his defense that Defendant declined to develop.

Because Defendant was charged in this case with crimes involving children, we also consider the role of the error in the larger context of the trial proceedings. We note that the State presented extensive evidence regarding the events that occurred on the day in question while at Cody's residence. All five of the minors present at Cody's residence testified at length of their first-hand knowledge of the events that occurred in the home. All of these witnesses testified that Defendant brought

12

alcoholic beverages to the residence and that some of the minors either drank or shared the alcohol with Defendant. Defendant also testified at the trial and admitted that he purchased alcohol and returned to the residence; he also acknowledged that Cody had taken a drink of his beer before Defendant was able to take it away from him. Faced with this extensive testimony concerning the consumption of alcohol at the residence during the incident, we conclude that there was no reasonable probability that the exclusion of character evidence regarding Defendant's safe and moral treatment of children affected the jury's verdict on Count 2 for SGAM as to Cody. With respect to Defendant's conviction for CDM on Count 1, all five minors testified regarding the events in the bedroom, although only three of these minors remained in the bedroom during the events that the jury instructions stated were sufficient to constitute CDM. Thus, there was considerable evidence supporting the guilty verdicts.

Our analysis is consistent with *Tollardo* and, contrary to the dissent's characterization, it entails more than mere "head counting." In addition to the minors' version of events, we have considered the testimony of Defendant's good friend that Defendant admitted to purchasing alcohol for the party but then left before anything happened and the testimony of Defendant's girlfriend that he had the character of a moral and law-abiding person.

13

In light of the foregoing, we are unable to conclude that it was reasonably probable that the jury's verdict would have been different but for the error. We therefore conclude that any error that arose from the exclusion of evidence of Defendant's safe and moral treatment of children was harmless.

**II.    Jury Instructions on Attempt Crimes**

**A.    Attempted Selling or Giving Alcoholic Beverages to a Minor (Attempted SGAM)**

We next address Defendant's claim that the attempted SGAM instructions given at trial omitted the essential element of specific intent. At trial, Defendant sought an instruction on attempt as a lesser-included offense under Counts 3 and 4 of the criminal information, which charged Defendant with having provided alcoholic beverages to Cody (Count 3) and to one of the minor girls (Count 4). At the jury instruction conference, the district court agreed to give attempt instructions on these two counts. The instruction provided to the jury on attempted SGAM read:

> For you to find [D]efendant guilty of attempted selling or giving alcoholic beverages to a minor as charged in Count 3, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.    [D]efendant did attempt to sell, serve, deliver, give, buy for or procure the sale or service of alcoholic beverages to a minor, Cody . . . ;
>
> 2.    Cody . . . was under the age of eighteen;

14

3.    This happened in New Mexico on or between May 1, 2008[,] and June 30, 2008.

An identical instruction was provided to the jury for attempted SGAM on Count 4, with the exception of changing the name of the minor.

On appeal, Defendant argues that the above attempt instructions erroneously omitted the intent element and therefore misdirected the jury as to the relevant law for attempt crimes. *See* UJI 14-2801 NMRA (requiring the State to prove beyond a reasonable doubt that: (1) the defendant intended to commit the crime; (2) the defendant began to do an act which constituted a substantial part of the crime but failed to commit the crime; and (3) the attempt took place on a certain date). On this basis, Defendant seeks reversal of his conviction for attempted SGAM conviction as a lesser included offense under Count 4, and he asks that we remand for retrial on this count.

As a preliminary matter, we reject the State's argument that Defendant failed to preserve this argument for appeal. Rule 5-608(D) NMRA, governing the preservation of error in jury instructions, states: "[F]or the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed." In this case, Defendant tendered attempt instructions as lesser included offenses on both counts of

15

SGAM at the jury instruction conference. Defendant's proposed instructions correctly tracked the language of the uniform criminal jury instruction for attempt crimes. *See* UJI 14-2801. After the district court determined that it would give an attempt instruction as a lesser included offense on both SGAM counts, the court reviewed Defendant's proposed instructions and discussed modifications to Defendant's instructions with the parties. The district court then asked for a clean set of instructions. When the district court reconvened the following morning, the State provided a clean version of the attempt instructions; however, these instructions varied from those discussed by the parties the day before. Defendant informed the district court that the instructions were different. The district court considered both instructions and then elected to give the State's version. Thus, Defendant adequately preserved this issue for appeal by proffering alternate instructions and invoking a ruling by the district court on his proposed instructions. *See* Rule 12-216(A) NMRA ("To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]").

Since Defendant preserved the issue, we review the attempted SGAM instructions given in this case for reversible error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. We agree with Defendant that the instruction given constitutes reversible error because attempt is a specific intent crime, *see State*

16

*v. Baca*, 1997-NMSC-059, ¶ 51, 124 N.M. 333, 950 P.2d 776, and because "[a] jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *State v. Ellis*, 2008-NMSC-032, ¶ 14, 144 N.M. 253, 186 P.3d 245 (internal quotation marks and citation omitted); *see State v. Foster*, 87 N.M. 155, 159, 530 P.2d 949, 953 (Ct. App. 1974) (reversing an attempted sodomy conviction where the attempt jury instruction failed to instruct jurors regarding the specific intent element).

However, the State's argument in response to Defendant's contention persuades us that the conviction on Count 4 should be vacated rather than reversed. The State claims that the attempt instruction should not have been given in the first place because there is no reasonable view of the evidence that the highest degree of crime was attempt and that all of the evidence presented at trial supported either the commission of SGAM or the failure to commit SGAM, but not an attempt. After careful consideration of the evidence presented at trial, we conclude that the State is correct. The jury, if properly instructed on attempt, would have to find that Defendant intended to and began to do an act that constituted the buying, selling, serving, delivering, giving, bringing for, or procuring the sale of or service of alcoholic beverages to the minor girl named in Count 4, but that he failed to commit the crime. *See* NMSA 1978, § 60-7B-1(A) (2004). At trial, the State presented the testimony of

17

seventeen-year-old Cody and four other minors, including the girl named in Count 4, who were present at Cody's residence during the incident. All five of the minors testified at trial that Defendant left the residence for a short while during the incident in order to purchase alcohol and that he returned with beer and a bottle of Jack Daniels. Some of the minors further testified that before leaving the residence, Defendant asked them if they wanted any alcoholic beverages and that he left after some of the minors answered in the affirmative. The minor girl named in Count 4 specifically testified that she drank from the bottle of Jack Daniels that Defendant brought to the residence, and two of the other minors confirmed that they observed this girl drinking the alcohol that Defendant brought back.

Defendant testified at trial that although he purchased alcoholic beverages on the date of the incident, the alcohol was only for him and that he did not intend or agree to purchase alcohol for the minors. He also denied giving alcohol to the minor girl named in Count 4. Defendant testified that after he returned to the residence with alcohol, he carried the alcohol around with him so that the minors would not drink any. Finally, a friend of Defendant testified that Defendant told him later that he had purchased alcohol for the party but then left before anything else happened.

This evidence could have supported a conviction of SGAM, and there was evidence that could have supported acquittal—Defendant's testimony that he neither

intended to nor actually purchased alcohol for the minors. We are unable to conclude that there is any view of this evidence supporting attempted SGAM as the highest degree of crime committed. Because the State is correct that an instruction—even a correct instruction—on attempt was improper, we cannot affirm Defendant's conviction based on that instruction. We therefore vacate Defendant's conviction on Count 4.

**B.      Attempted Contributing to the Delinquency of a Minor (Attempted CDM)**

Defendant argues that the district court erred in refusing to instruct the jury on attempting to contribute to the delinquency of a minor (attempted CDM) as a lesser included offense of CDM, as charged in Counts 1 and 2. At the jury instruction conference, Defendant tendered jury instructions for attempted CDM. The district court refused to give these instructions after determining that attempt, as a specific intent crime, may not be applied to the crime of CDM, which the district court concluded does not have an intent requirement. As additional grounds for refusal, the district court determined that there was no view of the evidence that would support the giving of an attempted CDM instruction on Counts 1 and 2. On appeal, Defendant claims that the district court's refusal to give instructions on attempted CDM constitutes reversible error.

We are not persuaded. We are unaware of any prior decision that has addressed whether attempted CDM is a crime in New Mexico. Defendant contends that New Mexico case law appears to contemplate the existence of the crime of attempted CDM and, as support, cites *Cummings v. State*, 2007-NMSC-048, 142 N.M. 656, 168 P.3d 1080. We disagree. Although the defendant in *Cummings* pleaded guilty to several charges of attempted CDM, *id.* ¶ 2, our Supreme Court in that case did not have before it the question of whether attempted CDM is a crime in New Mexico. Rather, the focus of *Cummings* was whether the defendant was permitted to seek a writ of certiorari from the Supreme Court to review the district court's denial of the defendant's petition for a writ of habeas corpus. *Id.* ¶¶ 1, 5-9. Because it is well established that "cases are not authority for propositions not considered," we do not consider *Cummings* in the present case. *State v. Frank*, 2001-NMCA-026, ¶ 5, 130 N.M. 306, 24 P.3d 338, *rev'd on other grounds*, 2002-NMSC-006, 132 N.M. 544, 52 P.3d 404.

In addition, Defendant directs our attention to *State v. Jernigan*, where our Supreme Court held that the crime of voluntary manslaughter—which is a general intent crime—may become a specific intent crime under limited circumstances and that in these limited instances, a defendant is permitted to seek an attempt instruction. *See* 2006-NMSC-003, ¶¶ 16-20, 139 N.M. 1, 127 P.3d 537. Here, Defendant offers

20

no indication of circumstances under which the crime of CDM may become a specific intent crime, and we therefore fail to see how *Jernigan* is applicable to this case. Defendant does not otherwise challenge the district court's refusal to recognize attempted CDM as a crime under the circumstances of this case.

We also conclude that the district court correctly determined that there was no view of the evidence in this case that would support attempted CDM as the greatest offense committed on Counts 1 and 2. "In order to obtain an instruction on a lesser included offense, there must be some view of the evidence pursuant to which the lesser offense is the highest degree of crime committed, and that view must be reasonable." *State v. Brown*, 1998-NMSC-037, ¶ 12, 126 N.M. 338, 969 P.2d 313 (alteration, internal quotation marks, and citation omitted). At trial, the State's theory of CDM, as reflected in the CDM instruction, was that Defendant committed CDM if the jury found that Defendant instructed Cody on how to massage the breast of one of the minor girls, allowed Cody and the minor girl to have sexual intercourse in front of Defendant, facilitated the situation by playing songs of a sexual nature, and/or assisted Cody in having sex by claiming that he was Cody's stepfather. When asked by the district court what view of the evidence would support an attempted CDM instruction, defense counsel argued that the jury could believe that Defendant entered Cody's bedroom with the intent to commit CDM, sat in the chair, played the guitar,

21

but then left the bedroom before singing sexual songs. In other words, defense counsel argued that Defendant's failure to complete any acts that the State argued constituted CDM was the same as attempted CDM. The district court correctly determined that Defendant's argument would support a theory that Defendant did not commit CDM at all. Moreover, during his testimony and the taped interviews played at trial, Defendant denied committing the acts that constituted CDM. Thus, there was no view of the evidence that would support a theory that the greatest offense Defendant committed was attempt. We therefore affirm the district court's refusal to instruct the jury on attempted CDM on Counts 1 and 2.

**III.    Double Jeopardy**

Defendant argues that his right to be free from double jeopardy was violated by his convictions for giving alcohol to Cody, as charged in Count 3, and attempting to give alcohol to one of the minor girls, as charged in Count 4. Because we have vacated Defendant's attempted SGAM conviction on Count 4, Defendant's constitutional protection against double jeopardy has not been impaired. We therefore need not address this argument.

**IV.    Ineffective Assistance of Counsel**

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App.1985), Defendant argues that he received

ineffective assistance of counsel. In order to establish a prima facie case of ineffective assistance of counsel, Defendant must demonstrate that "(1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that [the d]efendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted).

Defendant contends that his trial counsel erred in failing to secure a ruling during a bench conference. The bench conference followed Defendant's objection on relevancy grounds to victim impact testimony by one of the victims' mothers. Defendant admits that the bench conference discussions are not audible on the CD provided to this Court. Defendant had the obligation to prepare a statement of proceedings under such circumstances and failed to do so. Rule 12-211(H) NMRA. Consequently, the record on appeal does not provide enough information to evaluate adequately his trial counsel's actions.

Without further information, we are unable to conclude that trial counsel's actions were erroneous. In addition, Defendant has failed to state how the conduct of his attorney prejudiced his defense. We conclude that Defendant has not presented a prima facie case of ineffective assistance of counsel since he has established neither

ineffectiveness nor prejudice. Our determination does not preclude Defendant from pursuing his claim through habeas corpus proceedings, where he can develop a proper record. *See State v. Bernal,* 2006-NMSC-050, ¶¶ 33, 36, 140 N.M. 644, 146 P.3d 289.

**CONCLUSION**

We vacate Defendant's conviction on Count 4 for attempted SGAM. We affirm the remaining issues raised by Defendant on appeal.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**I CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

**RODERICK T. KENNEDY (concurring in part and dissenting in part).**

24

**KENNEDY, Judge (concurring in part and dissenting in part).**

**V.      Concurrence**

I concur with the Majority on the issues concerning jury instruction, double jeopardy, and ineffective assistance of counsel's issues.

**VI.    Dissent:    The Character Evidence Was Proper—Its Exclusion Was Harmful Error**

I would decide without assuming that the district court erred in excluding testimony about Defendant's character for the safe and moral treatment of children. An issue as important as the constitutional right to present a full defense should be clearly addressed and not skirted by a convenient assumption, even if the exclusion is found to be harmless, because an opinion on the issue would establish a rule for the bench and bar capable of application to future cases resembling this one.  I believe that the nature of the allegations against Defendant require a clear analysis supporting the Majority's assumption that the character evidence was erroneously excluded, which I hope to provide.  I furthermore conclude that the exclusion was not harmless and amounts to a violation of Defendant's constitutional rights.

**A.      The District Court Erred in Excluding the Character Evidence**

Because the district court's rationale for excluding the character evidence was that the character evidence for the moral and safe treatment of children was not the same as other kinds admissible under Rule 11-404, I reason that the district court

made a categorical interpretation of law not dependent on the facts of this particular case. I would therefore review this interpretation of Rule 11-404 and the exclusion of this character evidence de novo. *Martinez*, 2008-NMSC-060, ¶ 9. In New Mexico, a defendant can introduce character evidence if (1) the evidence is indicative of a trait of character; (2) character trait is "pertinent," Rule 11-404(A)(1); and (3) the evidence is in the proper form of reputation or opinion testimony, Rule 11-405(A) NMRA.

**B.      Trait of Character**

"Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance[,] or peacefulness." 1 McCormick on Evid. § 195 (6th ed. 2009); *see State v. Marshall*, 823 P.2d 961, 963 (Or. 1991) ("'Character' generally indicates a person's disposition or propensity towards certain behavior[.]" (internal quotation marks and citation omitted)); *see also United States v. West*, 670 F.2d 675, 682 (7th Cir. 1982) ("'Character trait' refers to elements of one's disposition[.]" internal quotation marks and citation omitted)), *overruled on other grounds by United States v. Green*, 258 F.3d 683, 690 (7th Cir. 2001). "'Character' is a propensity that is both general (i.e. propensity for 'honesty' or 'dishonesty,' 'violence' or 'non-violence') . . . and possessed of good or bad moral connotations.'" *State v. Ferguson*, 111 N.M. 191,

200, 803 P.2d 676, 685 (Ct. App. 1990) (internal quotation marks and citation omitted).

At issue here is whether Defendant's propensity toward the safe and moral treatment of children is a character trait. In *State v. Enakiev*, the Oregon Court of Appeals analyzed a similar issue in a sexual harassment case of whether sexual propriety is a character trait. 29 P.3d 1160 (Or. Ct. App. 2001). There, the court stated that "[a] person's character with respect to truthfulness means that person's propensity to tell the truth in all the varying situations of life. A person's character with respect to carefulness means that person's propensity to act with care in all the varying situations of life." *Id*. at 1163 (internal quotation marks and citation omitted). The court then concluded that "[e]vidence of a person's character with respect to sexual propriety evinces that person's propensity to act in a sexually proper manner in all the varying situations of life. . . . [S]exual propriety is materially indistinguishable from the other examples of character traits . . . and is properly deemed a character trait." *Id*. (footnote, internal quotation marks, and citation omitted).

Similarly, Texas has held the safe and moral treatment of children to be a character trait. *Thomas*, 669 S.W.2d at 421, 423; *see Wheeler*, 67 S.W.3d at 882. In holding that the trial court should have admitted character evidence showing that the

defendant was moral and had a good character for the safe and proper treatment of young children, the Texas Court of Appeals in *Thomas* compared the case before it to two cases admitting a defendant's reputation for sobriety and honesty. 669 S.W.2d at 423. In the two cases, Texas courts held that evidence of a defendant's reputation for sobriety was admissible in a driving while intoxicated case, and a defendant's reputation for honesty was admissible in an embezzlement case. *Id*. The *Thomas* court held that there was "no meaningful distinction between these cases and the case at bar" and that good character for the safe and proper treatment of young children was admissible. *Id*.

Texas later defined the limits of this holding by clarifying that a defendant may not introduce evidence of a defendant's reputation for being a "non-pedophile" because it is not evidence of a character trait. *Valdez v. State*, 2 S.W.3d 518, 520 (Tex. Ct. App. 1999) (internal quotation marks omitted). The court explained:

> To allow the defense to ask whether an accused in a sexual assault case has a reputation for being a pedophile is akin to asking a witness in a murder case if the defendant has a reputation for being a murderer. The status of being a murderer, or in this case a pedophile, is not a "character trait."

*Id*. at 520.

Other states have likewise determined that attributes comparable to the moral and safe treatment of children are character traits, passing muster under evidentiary

rules like New Mexico's Rule 11-404. *McAlpin*, 812 P.2d at 576 ("normalcy in . . . sexual tastes" (internal quotation marks omitted)); *Cunningham*, 82 N.W. at 779 ("humane and kindly disposition towards children" (internal quotation marks omitted)); *D.B.S.*, 700 P.2d at 637-38 ("an honest man and a good parent who would not injure his child"), *overruled on other grounds by Olson*, 951 P.2d 571; *Anderson*, 686 P.2d at 204 (orthodox sexual mores); *Workman*, 471 N.E.2d at 861 (excellent with children). *But see Hendricks*, 34 So.3d at 822-23 (holding that the defendant's character for sexual morality was inadmissible where the defendant was being prosecuted for sexual battery on a child less than twelve years of age because "whether one secretly molests children or does not would not be openly exhibited to the community" (internal quotation marks and citation omitted)), *cert. granted*, 49 So.3d 746.

I join the Majority of jurisdictions having considered this matter and conclude that Defendant's character for the safe and moral treatment of children is a character trait admissible under Rule 11-404. Evidence of a person's character with respect to their general moral and safe treatment of children evinces that person's propensity to act in an appropriate manner toward children in all the varying situations of life. Moreover, this evidence demonstrates a propensity that is both general and possessed

29

of good or bad moral connotations, as this court has have previously defined character evidence. *See Ferguson*, 111 N.M. at 200, 803 P.2d at 685.

**C.    Pertinence**

Nonetheless, the character trait must be pertinent to be admissible under Rule 11-404. "Pertinent" in the context of Rule 11-404(A)(1) is synonymous with "relevant," as it is described under Rule 11-401 NMRA. *Martinez*, 2008-NMSC-060, ¶ 33. Thus, the character trait must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11-401. "[P]roof of character, to be relevant, must be confined to the nature of the offense under charge and bear some pertinent analogy and reference to it." *State v. McKnight*, 21 N.M. 14, 32, 153 P. 76, 80 (1915); *accord United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002) ("In the criminal context, a pertinent character trait is one that is relevant to the offense charged."); 41 C.J.S. Homicide § 336 (2011) ("An accused's evidence as to character, it is ordinarily held, should be confined to evidence as to those traits which make it improbable that he or she would commit the crime charged, . . . and should not relate merely to general character or to irrelevant traits of character[.]").

The New Mexico Supreme Court has stated that "it is always relevant for the defendant to offer affirmative evidence of character, and to prove that it was such as

30

to make it unlikely that he would have committed the act charged against him." *McKnight*, 21 N.M. at 32, 153 P. at 80. "The theory underlying the relevance of character evidence is based on our common human experience that [t]he character . . . of the persons we deal with is in daily life always more or less considered by us in estimating the probability of their future conduct." *Martinez*, 2008-NMSC-060, ¶ 15 (alterations in original) (internal quotation marks and citation omitted). Thus, the inquiry here is whether Defendant's opinion evidence that he had a good character for the safe and moral treatment of children can make it more probable or less probable in the eyes of a jury that he contributed to the delinquency of a minor or gave minors alcohol.

As discussed above, the Texas Court of Appeals in *Thomas* held that character evidence showing that the defendant was moral and had a good character for the safe and proper treatment of young children was relevant and admissible where the defendant was charged with the rape of his ten-year-old step-daughter. 669 S.W.2d at 421, 423. The court held that "the excluded evidence was relevant to show the improbability that appellant raped his step-daughter." *Id*. at 423-24. In addition, the Oregon Court of Appeals has concluded that "[e]vidence of [the] defendant's character for excellent 'sexual propriety' certainly would tend to show that, on the particular occasion in question, [the] defendant did not act in a sexually improper

31

manner. Consequently, evidence of [the] defendant's 'sexual propriety' is pertinent evidence." *Enakiev*, 29 P.3d at 1163-64. Arizona has also concluded that "[the d]efendant's sexual normalcy, or appropriateness in interacting with children, is a character trait, and one that pertains to charges of sexual conduct with a child." *State v. Rhodes*, 200 P.3d 973, 976 (Ariz. Ct. App. 2008).

Other courts have made similar decisions about the relevancy of evidence like this. *See McAlpin*, 812 P.2d at 576 (holding that "normalcy in . . . sexual tastes" and having a high moral character were pertinent traits of character in a case involving lewd conduct with a child (internal quotation marks omitted)); *Cunningham*, 82 N.W. at 779 (holding that humane and kindly disposition toward children was relevant in an infanticide case); *D.B.S.*, 700 P.2d at 637-38 (admitting the defendant's "reputation in the community for being an honest man and a good parent who would not injure his child" when the defendant was charged with criminal incest with his minor daughter); *Anderson*, 686 P.2d at 204 (admitting evidence of the defendant's orthodox sexual mores as relevant in a case where the defendant was charged with three counts of sexual assault); *Workman*, 471 N.E.2d at 861 (noting that the trial court admitted evidence from "several witnesses who testified that he was excellent with children and that they completely trusted him"); *Wheeler*, 67 S.W.3d at 882 (holding that "evidence of [the defendant's] good character (or propensity) for moral and safe relations with

32

small children or young girls" was relevant in a case involving aggravated sexual assault of a child).

I find these cases to be very persuasive. In the present case, character evidence relating to Defendant's safe and moral treatment of children is relevant to demonstrating the improbability that he purchased the minors alcohol and encouraged their sexual activity. Evidence of Defendant's character for the safe and moral treatment of children tends to show that, on the day in question, Defendant did not purchase alcohol for Cody and his friends, and Defendant did not watch and coach the teenagers during intercourse, as he is accused of having done. This would be so because someone who has a character for treating children safely and morally would be less likely to engage in these activities. Such proof is relevant and legitimately presented as part of a defense in a case such as this.

Moreover, this Court acknowledges that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *State v. Lasner*, 2000-NMSC-038, ¶ 24, 129 N.M. 806, 14 P.3d 1282 (internal quotation marks and citation omitted); *accord California v. Trombetta*, 467 U.S. 479, 485 (1984) ("Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful

opportunity to present a complete defense."). Character evidence "alone, in some circumstances, may be enough to raise a reasonable doubt of guilt." *Michelson v. United States*, 335 U.S. 469, 476 (1948). "New Mexico cases have consistently recognized the right of the accused to introduce evidence of good character as substantive evidence of innocence, in contrast to a well-established general prohibition against other uses of character evidence as proof of conduct in both criminal and civil cases." *Martinez*, 2008-NMSC-060, ¶ 26. I note that the general rule against propensity evidence does not apply when a criminal defendant offers it in his own favor because, although "knowledge of the accused's character may prejudice the jury in his *favor*, . . . the magnitude of the prejudice or its social cost is thought to be less [than if such evidence was offered by the State]." 1 McCormick on Evid. § 191 (6th ed. 2009). This is why under the Federal Rules of Evidence, which New Mexico adopted in 1973,[1] character evidence offered by the defendant is subject to a "lower threshold of relevancy . . . than that applicable to other evidence." *United States v. Han*, 230 F.3d 560, 564 (2d Cir. 2000).

In light of the facts of this case and the importance of Defendant's right to present a complete defense, I conclude that character evidence of his safe and moral

---

[1] *State v. Flores*, 2010-NMSC-002, ¶ 42, 147 N.M. 542, 226 P.3d 641.

34

treatment of children is relevant to whether he contributed to the delinquency of minors or gave alcohol to minors.

**D.    Form**

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." Rule 11-405(A). Testimony about specific instances of conduct is limited to evidence that rebuts the opinions and reputations presented by the defendant. *Id*. In the present case, the three witnesses were going to offer their opinions as to whether Defendant had a good or bad character for the moral and safe treatment of children.

To the extent that the State argues and other courts hold that a defendant's character for the moral and safe treatment of children constitutes "specific acts" evidence, *Brooks v. State*, 512 S.E.2d 693, 694 (Ga. Ct. App. 1999), and *State v. Reeder*, 904 P.2d 644, 645 (Or. Ct. App. 1995), in violation of Rule 11-405, our Supreme Court has recently clarified the connection between specific acts and opinion and reputation character evidence. In *Martinez*, our Supreme Court explained that "[o]ne of the predictive tools by which . . . determinations [of character] are made is the consideration of one's character traits based on patterns of past conduct. . . . Because conduct reflects character, knowledge of character is necessarily helpful in

35

predicting conduct." 2008-NMSC-060, ¶ 16 (citation omitted). In this case, this Court is presented with opinions about how Defendant generally interacts with children based upon past patterns of conduct. The opinions of the three witnesses would not have constituted testimony about specific instances, as Defendant is not inquiring about specific instances. Rather, the inquiry was solely about whether Defendant has a good or bad character for moral and safe treatment of children. Thus, I determine that the character evidence proffered by Defendant was in the proper form under Rule 11-405.

Furthermore, when lay witnesses offer their opinion, it must be rationally based upon their own perceptions, it must be helpful to the determination of a fact at issue, and it cannot be "based on scientific, technical[,] or other specialized knowledge." Rule 11-701(C) NMRA. Here, Defendant's offer of proof demonstrated that the testimony was based upon each witness's perception of his behavior, as two of the witnesses had lived with him, and one was his girlfriend. Furthermore, the testimony would have been helpful for the jury in evaluating whether Defendant actually bought the teenagers alcohol and contributed to their delinquency. Lastly, the testimony was not based upon scientific, technical, or other specialized knowledge. Rather, the opinions were based upon each witness's personal dealings with Defendant.

In sum, I conclude that Defendant's proffered evidence was of a pertinent character trait in accordance with Rule 11-404(A)(1) and of a permissible form according to Rule 11-405(A). As such, it was improperly excluded. I now analyze whether the exclusion requires reversal of Defendant's convictions.

**E.    Exclusion of the Character Evidence Was Not Harmless**

I disagree with the Majority's conclusion that the exclusion of the character evidence falls within the non-constitutional standard for harmless error analysis. As stated above, New Mexico recognizes that defendants have a constitutional right to present a complete defense. *Lasner*, 2000-NMSC-038, ¶ 24. Under some circumstances, character evidence alone could raise a reasonable doubt of guilt. *Michelson*, 335 U.S. at 476. Federal courts[2] have indicated that a defendant's right to present a defense would be implicated and thus require constitutional error review if improper evidentiary rulings by the trial court denied a defendant the right to present a defense. The Eleventh Circuit has held that, "when a trial court's evidentiary rulings deprive a defendant of his right to present a defense, such rulings amount to constitutional error." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 942 (11th Cir. 2009). The Tenth Circuit has also indicated that "to establish constitutional error[, the defendant] must also show the evidence was material to the extent its

[2]Federal courts also analyze harmless error under the dichotomy of a constitutional/non-constitutional error approach. *Barr*, 2009-NMSC-024, ¶ 50.

37

exclusion violated his right to present a defense." *United States v. Dowlin*, 408 F.3d 647, 660 (10th Cir. 2005). Furthermore, the United States Supreme Court has "previously stated that the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense . . . [in] cases [dealing] . . . with the exclusion of evidence, or the testimony of defense witnesses[.]" *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993) (internal quotation marks and citations omitted).

In the case before this Court, the district court deprived Defendant of his right to present his defense when it excluded defense witness testimony that went to the crux of the State's case against Defendant—credibility. As explained further below, the State's case was composed of five eyewitnesses testifying against Defendant. Defendant's only defense was his own testimony giving a different version of events bolstered by character evidence that demonstrated his lack of culpability with regard to these crimes. The excluded character evidence was crucial to his defense. Its exclusion deprived Defendant of his constitutional right to present a defense. I next evaluate whether there is a reasonable possibility that the improperly excluded evidence affected the verdict. Under the new harmless error standard established in *Tollardo*, this court must "evaluate all of the circumstances surrounding the error. This requires an examination of the error itself, which depending upon the facts of the particular case could include an examination of the source of the error and the

38

emphasis placed upon the error." 2012-NMSC-008, ¶ 43. Such an examination is exemplified by the New Mexico Supreme Court's analysis in *Martinez*.[3]

In *Martinez*, a case that also involved a defendant's constitutional right to present a defense, the Supreme Court reversed the defendant's conviction because the excluded character evidence "had the potential of supporting a reasonable doubt about [the d]efendant's guilt." 2008-NMSC-060, ¶ 45. In that case, the defendant was charged with and convicted of solicitation of aggravated burglary, and the district court erroneously excluded evidence of the defendant's character for truthfulness. *Id.* ¶¶ 2, 5, 43. The State's case relied solely on one witness to provide first-hand testimony that the defendant had committed the crime; all other evidence was circumstantial. *Id.* ¶ 46. The Supreme Court explained that the excluded testimony

---

[3]Even though *Martinez* was written several years before *Tollardo*, the Supreme Court in *Martinez* did not engage in the *Moore* three-part test that was recently overruled by *Tollardo*. The reason *Martinez* did not engage in this line of analysis was because *Martinez* dealt with improper exclusion of evidence, and the *Moore* factors were only applicable to improper admission of evidence harmless error analysis. New Mexico appellate courts have typically addressed improper exclusion of evidence without applying these factors. *See Martinez*, 2008-NMSC-060, ¶¶ 8, 10, (holding that exclusion of character evidence was not harmless); *State v. Payton,* 2007-NMCA-110, ¶ 6, 142 N.M. 385, 165 P.3d 1161 (holding that evidence to counter the assumption of sexual naivete is essential to a proper defense where it exists; exclusion of such evidence is not harmless error); *State v. Balderama*, 2004-NMSC-008, ¶ 41, 135 N.M. 329, 88 P.3d 845 (concluding that the exclusion of testimony that made the defendant's theory of the case and lack of requisite intent more probable was not harmless error); *State v. Aragon*, 116 N.M. 291, 294, 861 P.2d 972, 975 (Ct. App. 1993) (stating that because the crux of the defendant's case was his credibility, the exclusion of the polygraph test results, if in fact the results were admissible, was not harmless error). Therefore, the analysis in *Martinez* was not affected by the Supreme Court's recent modification of harmless error analysis.

"would have constituted substantive evidence that [the d]efendant was not the kind of person who would have solicited someone to commit the charged crime involving dishonest conduct." *Id*. ¶ 47. The Supreme Court stated that it "cannot conclude that its erroneous exclusion was harmless [and held that the d]efendant is therefore entitled to a new trial at which the jury can decide what weight, if any, to give to the admissible evidence of his character." *Id*.

The Oregon Court of Appeals reached the same conclusion in a case very similar to this one when the *Enakiev* trial court erroneously excluded evidence regarding the defendant's sexual propriety. 29 P.3d at 1164. The court explained that "[t]he result in this case turned, unavoidably, on credibility. If the jury believed [the victim]'s rendition of the facts, as it apparently did, it would convict [the] defendant. Conversely, if the jury believed [the] defendant's version of the facts, it would acquit him." *Id*. In holding that the error was not harmless, the court concluded that "this was a classic swearing match in which evidence of [the] defendant's propensity to act in a sexually proper manner could have raised a reasonable doubt in the minds of the jury as to [the] defendant's guilt." *Id*.

In the case before us, I too conclude that the character testimony proffered by Defendant had the potential of supporting reasonable doubt about his guilt because the crux of the case rested upon the credibility of witnesses. The State's case relied upon

the testimony of the five teenagers who were at Cody's house when the crimes were said to have occurred. The teenagers testified that Defendant was present at the home when they arrived. They stated that Defendant asked them if they wanted alcohol and then purchased and gave them alcoholic beverages. The teenagers testified that Defendant thereafter sat in Cody's bedroom and sang songs about sex while the teenagers engaged in sexual activities. While Cody was having intercourse with one of the girls, Defendant coached Cody and manipulated his hand on her breast.

In contrast, Defendant testified that when the teenagers arrived at the house, he left to buy himself beer. He said that he refused to buy alcohol for Cody when asked. Defendant said he drank the entire six-pack of beer that he had purchased over the course of four to five hours. Defendant stated that he was called into Cody's bedroom by Cody and one of the girls when he returned from the store. Defendant chatted with the teenagers and then played the guitar and sang for them. Defendant testified that he saw Cody kiss two of the girls and left the bedroom after he saw Cody try to remove one of the girl's shirts. He was again called back into Cody's bedroom for a short period of time. He stated that he never saw the teenagers engage in sex. Defendant denied that he had manipulated Cody's hand on one of the girl's breasts.

I conclude that the error in this case, like the errors in *Martinez* and *Enakiev*, was not harmless. Here, the excluded character evidence had the potential of supporting a reasonable doubt about Defendant's guilt because it would have given him credibility in denying the teenagers' allegations. The State argues that because five eyewitnesses gave consistent testimony about Defendant's behavior on the day in question, any character evidence would fail to bolster his case or change the jury's decision. The Majority agrees with this analysis, listing the number of witnesses in the State's case and emphasizing in their Opinion that they find there to be "considerable evidence" against Defendant to support the guilty verdict. In doing so, the Majority fails to follow the Supreme Court's harmless error standard explained in *Tollardo*. The focus of *Tollardo* is the error and how it affected the verdict, not the number of witnesses testifying against Defendant. This head counting is exactly what the Supreme Court sought to eliminate when it decided *Tollardo*.

I disagree with the Majority and will not engage in head counting. Due to the conflicting evidence and the nature of the allegations, this case turned on credibility of the witnesses. Two of the character witnesses Defendant proffered would have testified that they and their children had lived with Defendant and that he had a good character for the safe and moral treatment of children. Defendant's girlfriend would have also attested to his good character for the safe and moral treatment of children.

Such testimony could have constituted substantive evidence that Defendant was not the kind of person who would have contributed to the delinquency of minors or bought alcohol for minors. Defendant is entitled to have the jury consider and weigh this evidence. *State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 ("It is the role of the factfinder to judge the credibility of witnesses and determine the weight of evidence."). This evidence could have bolstered Defendant's testimony when the jury was weighing his word against the words of the teenagers.

The State also contends and the Majority agrees that because the district court allowed Defendant to ask his character witnesses about his character for being moral and law-abiding and because one of his witnesses testified that he was moral and law-abiding, the error is harmless. I again disagree. Here, Defendant's character for being moral and law-abiding, which is relevant in most criminal cases, is not as probative as Defendant's proffered evidence in showing that he is not the type of person to commit the charged crimes. *Martinez*, 2008-NMSC-060, ¶ 34. Moral and law-abiding character does not specifically address Defendant's charges as having a good character for the moral and safe treatment of children does. A good character for the moral and safe treatment of children had the potential to support Defendant's testimony and raise a reasonable doubt in the State's case. The Majority states that "[a] person who is known to act morally[,] presumably acts morally toward everyone,

43

including children." In doing so, the Majority would require the jury to presume or infer that Defendant is moral toward children, rather than allowing Defendant to actually present evidence directly on that point. Presumptions and inferences based on the evidence are the purview of the jury and not this court. Defendant is entitled to present a full defense, and it should not be curtailed by an appellate court's presumption that a jury will draw certain inferences from evidence of a defendant's general moral character. Thus, I cannot conclude that the district court's erroneous exclusion was harmless. Defendant is entitled to have a jury weigh such character evidence in a new trial.

**CONCLUSION**

For the reasons stated above, I conclude that evidence of Defendant's character for the moral and safe treatment of children was admissible because it was relevant to his charges for CDM and SGAM. Thus, I believe Defendant's convictions for CDM and SGAM should also be vacated. I respectfully dissent.

_____
**RODERICK T. KENNEDY, Judge**

44