861 P.2d 972

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Daniel ARAGON, Defendant–Appellant.**

No. 13287.

Court of Appeals of New Mexico.

June 24, 1993.

Certiorari Denied Sept. 30, 1993.

292

Tom Udall, Atty. Gen. and Joel K. Jacobsen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals his conviction for aggravated battery (great bodily harm). NMSA 1978, § 30-3-5 (Repl.Pamp.1984). The conviction resulted from a fight in which the victim received serious head injuries and subsequently died. Although investigated as a homicide, the murder charge was dropped after the medical evidence indicated that the cause of the victim's death may have related to subsequent medical treatment. Defendant's first trial resulted in a mistrial after the prosecutor made a reference to the killing of the victim.

On appeal Defendant raises five issues: (1) whether the trial court erred in excluding the testimony of Steve Martinez, Defendant's polygraph expert; (2) whether the trial court erred in allowing Dr. Demarest's testimony from the first trial to be read to the jury; (3) whether the trial court erred in refusing to dismiss the charges against Defendant after the first trial based on double jeopardy; (4) whether the trial court erred in refusing to grant a mistrial in the second trial based on the references to "killing"; and (5) whether substantial evidence supports the conviction. We affirm on issues 2, 3, 4 and 5. As to issue 1, we remand to the trial court

for hearing on whether the State could adequately challenge the polygraph expert's testimony without reference to the portions of the pre-test interview that refer to the victim's death. If so, a new trial will be granted.

Defendant filed a motion to strike the attachment to the answer brief of the newspaper article that was not introduced into evidence at trial. We grant the motion. *See generally Flowers v. White's City, Inc.*, 114 N.M. 73, 834 P.2d 950 (Ct. App.1992).

### Exclusion of Steve Martinez's Polygraph Testimony

At trial, Defendant sought to present the testimony of Steve Martinez, his polygraph expert. Before Martinez was called to the witness stand, defense counsel noted that references in the pre-test interview to a killing should be excluded. The State then argued that Defendant could not "have it both ways" and argued that a foundation could not be laid for admitting Martinez's opinion since the tape recording of the pre-test interview could not be admitted into evidence. The State also seemed to argue the validity of the polygraph test was suspect because Defendant was no longer charged with homicide, but that is not entirely clear from the record.

The trial court excluded Martinez's testimony by ruling that Defendant would not be able to lay a proper foundation without the tape of the pre-test interview. Defendant objected to the ruling, arguing that a foundation could be laid for Martinez's opinion without the admission of the entire pre-test interview tape. Defendant also objected to the trial court's exclusion of the polygraph evidence without first listening to the tape of the pre-test interview and asked to put Martinez on the stand to make an offer of proof of what Martinez would have testified to had his testimony been allowed. The trial court overruled the objection and refused Defendant's request to make an offer of proof by putting Martinez on the stand.

█ The factual determination of the admissibility of polygraph evidence lies within the sound discretion of the trial court. *Baum v. Orosco*, 106 N.M. 265, 742 P.2d 1 (Ct.App.1987). A trial court's exercise of discretion will be disturbed on appeal only when the facts and circumstances of the case do not support the logic and effect of the ruling in question. *See State v. Brionez*, 91 N.M. 290, 293, 573 P.2d 224, 227 (Ct.App.) (citing *State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970)), *cert. denied*, 91 N.M. 249, 572 P.2d 1257 (1977). In order to exercise discretion properly, it follows that the facts and circumstances surrounding an issue must be sufficiently set forth to render a reasoned decision. On the record before us, we determine that the trial court had no basis on which to rest its ruling to exclude the polygraph evidence.

█ SCRA 1986, 11–707 (Cum.Supp. 1992) lists the requirements for the admissibility of the results of polygraph examinations. Section E of the rule requires the recording of the pre-test interview along with the actual polygraph test. Generally, in pre-test interviews, the subject is asked in detail about the incident under investigation. Its importance includes creating a psychological climate necessary for a reliable test and persuading the test subject that the test is effective. *See Scientific Validity of Polygraph Testing: A Research Review and Evaluation* 12, Office of Technological Assessment (Nov.1983). SCRA 707(E) does not define the nature or scope of the pre-test interview, however. *B & W Const. Co. v. N.C. Ribble*, 105 N.M. 448, 450, 734 P.2d 226, 228 (1987). Moreover, while the district court has discretion regarding the admissibility of polygraph evidence, failure to record all of the pre-test interview generally goes to the weight, not the admissibility, of the evidence. *See id.* at 451, 734 P.2d at 229. Thus, an incomplete pre-test interview does not, by itself, mandate the exclusion of the polygraph evidence.

In this case, the full pre-test interview was recorded, but the references to the victim's death became potentially prejudicial when the State dropped the murder

charge. There is no way of knowing, however, the impact of those references on the test since the trial court neither listened to the tape of the pre-test interview nor permitted Defendant to make his offer of proof on the admissibility of the expert's opinion in spite of the problems with the pre-test interview. The purpose of an offer of proof is to inform the court so that it may make a reasoned and intelligent decision. *Malibu Pools v. Harvard,* 97 N.M. 106, 108, 637 P.2d 537, 539 (1981); *see* SCRA 1986, 11–103(A)(2); *cf. B & W Const. Co.,* 105 N.M. at 450, 734 P.2d at 228 (defendant refused to voir dire on recording of full pre-test interview). The trial court cannot know " 'whether evidence which a party desires to present is competent or material until proffered.' " *Malibu Pools,* 97 N.M. at 108, 637 P.2d at 539 (quoting 75 Am.Jur.2d, *Trial* § 128 (1974)).

■ Given the circumstances of the present case, we find that the trial court could not reasonably and intelligently have determined, without considering Defendant's offer of proof, whether excluding from evidence all references to the killing or death of the victim would handicap the State in challenging the reliability of the polygraph test result, either by cross-examination of Martinez or through testimony by the State's own expert regarding the Martinez polygraph test. The State now argues that Defendant has not explained on appeal what the polygraph expert's testimony would have proven and thus has not demonstrated an abuse of discretion. We disagree. It is precisely because of the trial court's action in disallowing the tender of proof that neither Defendant nor this Court can know what the expert's testimony would have proven or even whether it would have been competent evidence. *See State v. White,* 58 N.M. 324, 334–35, 270 P.2d 727, 733–34 (1954). It was an abuse of discretion to exclude the polygraph evidence without permitting Defendant's offer of proof or listening to the tape of the pretest interview. *See* SCRA 11–103(A)(2); *cf. Malibu Pools,* 97 N.M. at 108, 637 P.2d at 539 (trial judge erred by leaving the courtroom during defendant's offer of proof).

■ Even when an abuse of discretion has been found in excluding evidence, however, this Court will not reverse a trial court's ruling unless the erroneous ruling prejudiced a defendant. *State v. Jett,* 111 N.M. 309, 312, 805 P.2d 78, 81 (1991). We must therefore consider whether exclusion of the polygraph could have prejudiced Defendant.

■ The central issue at Defendant's trial was the credibility of the witnesses. The State's case consisted, in part, of the testimony of four eyewitnesses to the altercation who identified Defendant as fighting with the victim, Stanley Teal. Defendant's case, on the other hand, presented the testimony of seven witnesses who all stated it was Defendant's younger brother who was involved in the fight rather than Defendant. Defendant himself testified that he was asleep inside his apartment at the time of the fight. In light of the conflicting testimony from both sides, Defendant's credibility to the jury was crucial to his defense. Polygraph test results indicating Defendant was being truthful about his whereabouts on the night of the fight may have convinced the jury to believe Defendant. We determine the exclusion of the polygraph test results, if in fact the results were admissible, was not harmless error.

For the above reasons, we hold that the trial court abused its discretion by not reviewing the pre-test interview or permitting Defendant to make an offer of proof before excluding Steve Martinez's testimony on the polygraph examination. We remand for a hearing on the admissibility of Defendant's polygraph evidence.

Once the trial judge has listened to the tape, heard the proffered testimony, and considered arguments of counsel, the judge can determine whether the testimony should be admitted even if it excludes the portions of the tape to which Defendant objects. Under SCRA 1986, 11–106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought

in fairness to be considered contemporaneously with it." By the same token, Defendant should be permitted to introduce Martinez's testimony while excluding from evidence portions of the pre-test interview only if the exclusion does not prejudice the State's opportunity to challenge the Martinez testimony. If, after the hearing, the trial court decides the evidence should have been admitted, a new trial will be granted; if not, the judgment will be affirmed.

*Admission of Dr. Demarest's Testimony from the First Trial*

Dr. Demarest was the emergency-room doctor who treated the victim's injuries on the night of the fight. His testimony was relevant to the State's proof of the great-bodily-harm element of the aggravated battery charge. He testified at the first trial, but refused to appear at the second trial because he had just returned from active duty as part of the "Desert Storm" operation in the Middle East and claimed to be feeling a great deal of stress as a result of his experience at the time of trial. The State sought to introduce into evidence a transcript of the doctor's testimony from the first trial on the basis of the unavailability of the witness. SCRA 1986, 11–804.

■ Assuming that admission of the transcript from the prior trial was error and that Defendant adequately preserved the error, we now address whether the error was harmless. *See State v. Macias,* 110 N.M. 246, 794 P.2d 389 (Ct.App.), *cert. denied,* 110 N.M. 183, 793 P.2d 865 (1990). For the erroneous admission of Dr. Demarest's transcribed testimony to be harmless, there must be:

(1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so miniscule [sic] that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

*State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). Under this test, we find the error to be harmless.

■ The improperly-admitted evidence concerned proof of great bodily harm. Great bodily harm is defined, in part, as "an injury to a person which creates a high probability of death." SCRA 1986, 14–131. Five witnesses apart from Dr. Demarest described the injury Stanley Teal received when he was struck by Defendant. Cindy Doerr, Eric Hollinger, Kenneth Gentry and Chris Burrows all stated that Defendant punched Teal in the head when Teal had his guard down. They all described Teal falling backward, hitting his head on the side of a camper parked on the street, and then hitting his head on the pavement. Doerr stated that Teal's head hitting the pavement sounded like "a gun going off," while Hollinger described the sound as one that would be made by a watermelon hitting the ground and Burrows said the sound made was a sound "you never want to hear." Burrows saw that Teal's eyes rolled into the back of his head when he landed; Gentry stated that Teal could not move and looked as if he went into "shock" right after he hit his head. In addition, Detective Barbara Cantwell testified that Teal was having difficulty breathing, was unconscious and unresponsive, and was bleeding from the mouth when she arrived at the scene. She later found blood on the side of the camper and a pool of blood and vomit on the street by the camper.

From this evidence, we conclude the jury could reasonably infer that Stanley Teal suffered great bodily harm as a result of the blow struck by Defendant. Thus, there was substantial evidence to support Defendant's conviction without the prior testimony of Dr. Demarest. We also conclude that the doctor's prior testimony on Teal's injuries was insignificant when compared with the volume of the other testimony showing great bodily harm. Finally, there was no conflicting evidence to discredit the State's testimony on the element of great bodily harm. While Defendant's witnesses presented conflicting testimony on the identity of Teal's assailant, none of them dis-

puted the descriptions of Teal's injury from the State's witnesses. From our application of the *Moore* test to this case, we determine that even if the transcript was improperly admitted under SCRA 11–804, the error was harmless.

■ In addition to arguing that the transcript of Dr. Demarest's testimony from the first trial was improperly admitted under SCRA 11–804, Defendant argues that the admission of the transcript violated his right to confront Dr. Demarest. The right of confrontation has two components. A person standing trial has the right of cross-examination and "the right of the accused, the court and the jury to observe the deportment and conduct of the witness while testifying." *State v. James,* 76 N.M. 376, 380, 415 P.2d 350, 352 (1966). Defendant based his objection at trial solely on denial of the right to cross-examine Dr. Demarest and he does not argue his right of face-to-face confrontation in his brief. We do not consider, therefore, this aspect of Defendant's right to confrontation. *See Macias,* 110 N.M. at 251, 794 P.2d at 394.

■ Again, we assume for the sake of analysis of the issue that admission of Dr. Demarest's prior testimony was error. Under this assumption, Defendant's right to cross-examine the doctor was violated. We find, however, that any violation of Defendant's confrontation rights is harmless beyond a reasonable doubt. *See State v. Martinez,* 99 N.M. 48, 52, 653 P.2d 879, 883 (Ct.App.), *cert. denied,* 99 N.M. 47, 653 P.2d 878 (1982). We note that Defendant had a full and fair opportunity to cross-examine Dr. Demarest at his first trial. *See State v. Massengill,* 99 N.M. 283, 657 P.2d 139 (Ct.App.1983) (where defendant had opportunity and similar motive to cross-examine witness at preliminary hearing, admission of witness's taped testimony was permissible). We further find that proof of great bodily harm as presented by the State's witnesses was overwhelming; such proof independently established that Stanley Teal suffered great bodily harm. *See Martinez,* 99 N.M. at 52, 653 P.2d at 883. Accordingly, denial of Defendant's

right to cross-examine the doctor was harmless error.

### Motions to Dismiss and Censure

After the first trial, Defendant filed motions to dismiss and to censure the prosecutor. At the hearing on the motion to dismiss, Defendant argued that the prosecutor provoked a mistrial by referring to the victim as having been killed after the jury found out that the prosecutor had withheld exculpatory evidence. To the extent Defendant's brief argues other points of alleged misconduct, such as the prosecutor failing to caution his witnesses adequately, we do not consider these arguments because Defendant did not rely upon them in district court. *See State v. Day,* 94 N.M. 753, 758, 617 P.2d 142, 147, *cert. denied,* 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 77 (1980).

■ The trial court determined the prosecutor had not deliberately mentioned that the victim had been killed and denied the motion to dismiss on the basis of prosecutorial misconduct. Defendant urges this Court to adopt a broader interpretation of the Double Jeopardy Clause than afforded by the United States Supreme Court's interpretation of the federal Double Jeopardy Clause. *See Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). We need not consider whether the United States Supreme Court's decision has amended the test adopted in *Day* since, even under the *Day* test, we conclude the trial court properly determined that the prohibition against double jeopardy did not bar a retrial in this case.

In *Day,* our Supreme Court determined that double jeopardy did not bar the defendant's retrial even though the prosecutor's conduct was error and was not to be condoned. The Supreme Court determined that the prosecutor did not engage in this misconduct "for the purpose of precipitating a motion for a mistrial, gaining a better chance for conviction upon retrial, or subjecting the defendant to the harassment and inconvenience of successive trials." *Id.,* 94 N.M. at 757, 617 P.2d at 146. In the present case the evidence was conflicting

about the purposefulness of the error and the relative chances for conviction upon retrial. As noted above, the trial court determined the prosecutor's reference to the victim being killed was inadvertent and was not made deliberately in order to gain an advantage over Defendant. There was evidence at the hearing to support this determination. We find the trial court did not err in denying Defendant's motion to dismiss based on double jeopardy grounds. *See Day.*

During the hearing, the court determined that it would first consider the motion to dismiss and then "we'll decide what we want to do with the other." A written form order was entered denying the motion to dismiss and continuing the motion for censure. Although Defendant's brief asserts that the trial court's ruling in effect denied the motion for censure, no order on the motion to censure appears in the record. *See generally Harrison v. ICX, Illinois–California Express,* 98 N.M. 247, 647 P.2d 880 (Ct.App.) (appeals will lie only from final, written orders), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982). In any event, the grant or denial of the motion to censure would have no effect on whether Defendant has a right to a new trial.

### Denial of Mistrial at Second Trial

 Defendant asserts the trial court erred in denying his motion for mistrial based on the numerous death references, Detective Castso's remark that he was investigating a homicide case, and references to a first trial. The grant or denial of a mistrial rests within the sound discretion of the trial court. *State v. Gardner,* 103 N.M. 320, 706 P.2d 862 (Ct.App.), *cert. denied,* 103 N.M. 287, 705 P.2d 1138 (1985). Both witnesses for the State and the defense made mention of the victim being killed and Defendant himself stated he was being arraigned for a second degree murder charge. It is clear from the transcript that Detective Castso's remark was brief and inadvertent. Moreover, the jury knew that the only charge was aggravated battery and had been told during voir dire that the victim's death had nothing to do with the circumstances of this case. We are not persuaded the trial court abused its discretion in denying the motion for mistrial.

### Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence to support his conviction. *See State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967); *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985). We review the sufficiency of the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *State v. Brown,* 100 N.M. 726, 676 P.2d 253 (1984). In the present case various witnesses identified Defendant as the person who struck the victim. There was also evidence that the blows the victim received during the fight caused great bodily harm. Although there was conflicting evidence, we determine there was sufficient evidence to support the convictions. *See Brown; see also State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988) (the factfinder is not required to believe Defendant's version of events).

### Conclusion

Defendant's conviction is conditionally affirmed, subject to remand to the district court for a hearing in accordance with this opinion.

**IT IS SO ORDERED.**

HARTZ and BLACK, JJ., concur.