Certiorari Denied, April 23, 2013, No. 34,023

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMCA-064

Filing Date: January 16, 2013

Docket No. 30,852

STATE OF NEW MEXICO,

> Plaintiff-Appellee,

v.

DEREK GARCIA,

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}** Convicted of two counts of second degree criminal sexual contact of a minor (CSCM), Defendant appeals. We hold that the district court erred by concluding that a transcript of Defendant's police station interview would be too confusing for the jury, once it was redacted in a manner consistent with the court's in limine ruling, without first reviewing the redacted form of the transcript. However, we conclude that this error was

harmless. We hold further that the district court erred by not conducting an in camera review of records Defendant sought in discovery. We remand for district court review of these records to determine (1) if any portion of the records is material to the charges or the defense against them, and (2) if exclusion of material portions was prejudicial to Defendant. We are not persuaded by Defendant's other assertions of error.

## BACKGROUND

**{2}** Defendant was the live-in boyfriend of Victim's mother, with whom he had three children, the oldest of whom was four years younger than Victim. Victim, who was eight years old, also lived in the home. In February 2009 Defendant was the caretaker of the four children while Victim's mother worked the night shift at a Burger King.

**{3}** On February 12, 2009, Victim reported at school to a Children, Youth and Families Department (CYFD) services provider that the night before, Defendant had touched her vaginal area when he was in her room. Victim was interviewed about the incident on February 17, 2009, by Hank Baskett, the executive director of Oasis Children's Advocacy Center, a forensic interviewing service, while Detective Todd Moore of the Portales Police Department and Investigator Janelle Pacheco of CYFD watched on a closed-circuit television from another room.

**{4}** The same day, after watching Victim's Oasis interview, Detective Moore and Investigator Pacheco went to Defendant's home, where they conducted an audio-recorded interview of Defendant. Defendant told Investigator Pacheco and Detective Moore that he had entered Victim's room the night of February 11, 2009, and did not mean to touch her inappropriately, but instead intended to "scoot her over in the bed." The next day, February 18, 2009, Detective Moore conducted a second audio-recorded interview of Defendant at the police station with Investigator Pacheco present. The interview lasted about one hour. Prior to trial, the State prepared a written transcript of the interview.

**{5}** Defendant was found guilty, and a penitentiary sentence of thirty-one years, with nineteen years suspended, was imposed. Additional facts are included as needed in our analysis of Defendant's arguments.

## ANALYSIS

**{6}** Defendant makes six arguments. He argues first that the district court abused its discretion when it refused to admit the transcript of the police station interview after it was used to refresh the memory of several witnesses. Next, he argues that the district court erred in failing to order disclosure of CYFD records related to allegations of abuse by Victim. He also maintains that the district court's grant of the State's motion in limine to limit reference at trial to earlier allegations by Victim violated his due process rights and ability to cross-examine witnesses against him. In addition, he argues that there was insufficient evidence to support two convictions for CSCM and that the district court improperly denied his

2

motion to suppress the statements he made in the police station interview. Finally, he argues that even if these errors are not reversible individually, their cumulative effect was to deprive him of a fair trial. We address Defendant's arguments in the order presented.

**A.    The District Court Abused Its Discretion in Excluding the Transcript of Defendant's Police Station Interview Without First Reviewing the Transcript in Redacted Form**

{7}    Defendant contends that because the State's witnesses mischaracterized his statements from the interview, he was entitled to introduce into evidence the full context of those statements pursuant to the rule of completeness embodied in Rule 11-106 NMRA and, therefore, that the district court erred in its ruling denying admission into evidence of the transcript of the interview. Before analyzing Defendant's contention, we address the State's arguments that the issue is not properly before us.

{8}    The State argues that Defendant failed to preserve his argument that he had a right to admission of the transcript under Rule 11-106 because he did not direct the district court to that specific rule when he argued that the transcript should be admitted into evidence. *See State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)). We conclude that the district court and the State were fairly on notice of Defendant's assertion that the transcript was admissible because his statements were being taken out of context through the State's use of Defendant's statements and that the transcript would show the actual context and content of his statements. Therefore, despite Defendant's failure to cite the specific rule, we conclude that the argument was sufficiently preserved for appellate review. *See State v. Smile*, 2009-NMCA-064, ¶ 39, 146 N.M. 525, 212 P.3d 413, *cert. quashed*, 2010-NMCERT-006, 148 N.M. 584, 241 P.3d 182; *see also* Rule 12-216 NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required[.]").

{9}    The State also contends that because contents of the interview were admitted only through the testimony of the State's witnesses and Defendant, and no portion of the written transcript itself was actually introduced into evidence, the rule of completeness does not apply. *See* Rule 11-106 (providing that its provisions apply when "a writing or recorded statement or part thereof is introduced by a party"); Rule 11-612 NMRA[1] (stating in part that when a writing is used to refresh the memory of a witness, the adverse party is entitled to introduce in evidence any portion that relates to the witness's testimony).

{10}    We conclude that where, as in this case, the State used the transcript extensively to

---

[1]We express no opinion as to whether the transcript is independently admissible pursuant to Rule 11-612.

ask about specific statements made by Defendant, the contents of the transcript were "introduced" into evidence sufficiently to invoke Rule 11-106. *See* 21A Charles Alan Wright et al., *Federal Practice and Procedure*: *Federal Rules of Evidence* § 5075, at 39-40 (2d ed. 2012).

> Most courts that have considered the question have held that using a writing to refresh the recollection of a witness is a sufficient use of the writing to trigger [Fed. R. Evid.] 106. Given that [Fed. R. Evid.] 612 gives the opponent the power to disrupt the proponent's case to inspect the writing, as well as the right to introduce parts of the writing into evidence, policy would seem to make this an easy case for the application of [Fed. R. Evid.] 10[6].[2]

*Id.* Under the circumstances, we would be placing form over substance if we required the physical writing itself to be introduced into evidence for Rule 11-106 to be invoked.

**{11}** Turning to the merits, we review a district court's ruling excluding evidence for an abuse of discretion. *See State v. Lucero*, 1998-NMSC-044, ¶ 5, 126 N.M. 552, 972 P.2d 1143. To the extent our analysis requires interpretation of applicable rules of evidence, our review is de novo. *State v. Moreland*, 2007-NMCA-047, ¶ 9, 141 N.M. 549, 157 P.3d 728, *aff'd*, 2008-NMSC-031, 144 N.M. 192, 185 P.3d 363. The applicable version of Rule 11-106[3] states: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 11-106. Our rule "is an expression of the common law rule of completeness." *Barr*, 2009-NMSC-024, ¶ 33. "The primary purpose behind the rule of completeness is to eliminate misleading or deceptive impressions created by creative excerpting." *Id.* ¶ 34; *see State v. Baca*, 120 N.M. 383, 390, 902 P.2d 65, 72 (1995) ("The purpose of [Rule 11-106] is to permit parties to introduce recorded statements to place in context other evidence that, when viewed alone, may be misleading."). "[T]he rule of completeness applies to insinuations, innuendos, and omissions." *State v. Patterson*, 625 S.E.2d 239, 243 (S.C. Ct. App. 2006).

---

[2]Federal Rule of Evidence 106 is identical to our state "rule of completeness" codified as Rule 11-106. *State v. Barr*, 2009-NMSC-024, ¶ 33, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

[3]Rule 11-106 was amended in 2012, but because this case was filed before June 16, 2012, the effective date of the amendment, the text of the old rule applies. *See* Rule 11-106, Comm. cmt. to 2012 amendment. We note, however, that the result we reach should be unaffected by the amendments to Rule 11-106 because the changes to the rule were intended to be stylistic, not substantive. *Id.*

4

**{12}** Defendant testified at trial on his own behalf. The State refreshed Defendant's recollection with the transcript multiple times during cross-examination. In fact, most of the State's cross-examination concerned Defendant's statements at the police station; the prosecutor often read specific questions and answers directly from the transcript and referenced specific pages and lines. At other times, the State asked questions of Defendant and requested that he locate the answers in the transcript. Indeed, at one point, the court recessed to allow Defendant time to review the entire transcript and count the occurrences of a given statement. Defendant maintained in his testimony that when he made the statements cited by the State he was talking about touches that occurred while play-wrestling with Victim, not inappropriate sexual touching. Since the State, Detective Moore, and Investigator Pacheco characterized Defendant's statements as "admissions," there was a conflict in the testimony as to the meaning of those statements. Thus, the context of the statements was relevant to Defendant's defense. In fairness to Defendant, the transcript, redacted as discussed below, should have been considered for admission by the district court under the rule of completeness.

**{13}** Here, however, the district court failed to properly consider Defendant's motion to admit the transcript. The district court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 11-403 NMRA. In this case, Defendant moved to admit the transcript on the ground that the State's questions took his statements out of context, and because the State used the transcript extensively in refreshing Defendant's recollection. Defendant argued that the transcript should "be entered into evidence or read in its entirety for the jury." The State countered that the district court's pre-trial ruling excluding reference to previous reports of sexual abuse by Victim would require "copious amounts of time" to redact the transcript. (We note that earlier in the trial the State claimed it would take "at least thirty minutes" to redact the transcript.)

**{14}** The district court denied Defendant's motion, stating that it would "stand by the ruling." The ruling to which the district court referred was that the audio-recording of the interview would not be admitted because references to Victim's prior reports of sexual abuse, which were excluded by the State's pre-trial motion in limine, were "peppered" throughout and the redacted recording would be too confusing to the jury. Although the transcript was mentioned in argument before this ruling, the ruling was in response to Defendant's request for the transcript recording to be admitted under the best evidence rule. Thus, that ruling was not specific to the transcript in redacted form.

**{15}** A district court's determination that potentially probative evidence should be excluded because it is too confusing must be based on an analysis of the evidence itself. *State v. Aragon*, 116 N.M. 291, 293, 861 P.2d 972, 974 (Ct. App. 1993) ("In order to exercise discretion properly, it follows that the facts and circumstances surrounding an issue must be sufficiently set forth to render a reasoned decision."), *overruled on other grounds by Tollardo*, 2012-NMSC-008. Here, the record fails to establish that the district court ever

5

reviewed the recording or transcript in a redacted form. Thus, the district court excluded the transcript without a proper basis on which to determine that the risk of confusion to the jury *substantially outweighed* its probative value in representing the context of Defendant's statements. This was an abuse of discretion. *See Aragon*, 116 N.M. at 293-94, 861 P.2d at 974-75 (concluding that the district court abused its discretion when it did not listen to an offered tape or allow the party to present an offer of proof before excluding the evidence).

**{16}**    Nevertheless, a new trial is not required. This Court has in the past remanded cases for a hearing on admissibility where the district court erred by not considering evidence properly and where exclusion of the evidence was not harmless. *See id.* at 295, 861 P.2d at 976. But here, remand for a hearing on the admissibility of the transcript is unnecessary because we have the transcript available to us and, after review of it, we conclude that even if it were admissible, the district court's failure to review and admit it was harmless.

**{17}**    The error here is non-constitutional. *Barr*, 2009-NMSC-024, ¶ 53 ("[W]here a defendant has established a violation of . . . court rules, non-constitutional error review is appropriate."). "[N]on-constitutional error is reversible only if the reviewing court is able to say, in the context of the specific evidence at trial, that it is reasonably probable that the jury's verdict would have been different but for the error." *Id.* ¶ 54. We "evaluate all of the circumstances surrounding the error. This requires an examination of the error itself, which . . . could include an examination of the source of the error and the emphasis placed upon the error." *Tollardo*, 2012-NMSC-008, ¶ 43. Although it should not be the "singular focus of the harmless error analysis," *id.*, "evidence of a defendant's guilt . . . may often be relevant, even necessary, for a court to consider, since it will provide context for understanding the role the error may have played in the trial proceedings." *State v. Moncayo*, 2012-NMCA-066, ¶ 16, 284 P.3d 423 (internal quotation marks and citation omitted).

**{18}**    We conclude after review of the transcript that there is no "reasonabl[e] probabil[ity] that the jury's verdict would have been different" if the transcript had been admitted. *Barr*, 2009-NMSC-024, ¶ 54. Defendant contends that "since [Defendant] maintained in his testimony that he had been talking about wrestling, denying the jury the ability to review what was actually said was an abuse of discretion." Implicit in this argument is the assumption that the redacted transcript was sufficiently exculpatory to change the verdict notwithstanding the other evidence. *See id.* After a review of both the transcript and the evidence at trial, we disagree.

**{19}**    First, Defendant's statements are not clearly exculpatory even when read in the context of the transcript. At times in the interview Defendant maintained that the touches Victim complained of occurred when they were wrestling. He said, "Not even touching, I didn't even touch her" and "I don't touch" or "I don't touch" her at least four times. On the other hand, at one point Detective Moore told Defendant, "I'm not talking about wrestling," and shortly thereafter, Defendant said he touched Victim "on her butt" with his hands. Defendant declined to say that Victim was lying and said several times that Victim told him not to touch her in certain places or ways Defendant said that sometimes when Victim

protested, she told him to "do that to [M]om."

**{20}** We review the transcript not to usurp the role of the jury in evaluating Defendant's statements, but to examine "whether [the] error was likely to have affected the[ir] verdict." *Tollardo*, 2012-NMSC-008, ¶ 42 (stating that this question is the "central inquiry" of the harmless error analysis). In this case, although the transcript should have been considered under Rule 11-106 to permit Defendant to put his statements in context after they were characterized as "admissions" by the State, as a whole the value of the transcript to Defendant's case is too dubious for us to conclude that its admission would have influenced the jury's deliberations in Defendant's favor.

**{21}** The probable impact of the transcript is further diminished in light of the "non-objectionable evidence" adduced at trial. *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 ("To put the error in context, we often look at the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial."). Victim testified with specificity about the way Defendant touched her and demonstrated with props how Defendant touched her. She testified that Defendant had been drinking Budweiser with some guests before he touched her. The forensic interviewer testified about how forensic interviews are conducted with children so as to avoid leading questions and that he had conducted an interview with Victim. The drawings Victim made during the forensic interview showing the places on her body Defendant touched were admitted into evidence. The CYFD employee to whom Victim first reported the alleged inappropriate touching the day after it occurred testified as to what Victim told her and Victim's demeanor. She also testified that when she went to Defendant's home later that day, she observed beer bottles on the lawn, consistent with Victim's testimony that Defendant had been drinking Budweiser the night before, and that Defendant whispered, "What have I done?" after he and Victim's mother were informed of Victim's disclosure. Detective Moore and Investigator Pacheco testified about what Defendant said and did during their interviews with him, including his demeanor. Victim's grandmother testified that since the time of the alleged touching Victim had been "moody" and "aggressive" and her grades had dropped.

**{22}** Defendant and Victim's mother testified for the defense. Victim's mother testified that she never observed inappropriate touching of Victim by Defendant while they were wrestling. She stated that Victim would get "real mad" when asked to do chores around the house and that Defendant was the one who made sure Victim did them. She said that Victim participated in the wrestling matches with Defendant and "most often" initiated them. Defendant testified that he wrestled with Victim and the other children and that he went into the bedroom that night to check on the sleeping children.

**{23}** Given that the transcript was not clearly exculpatory and considering it in the context of the other evidence, we cannot conclude that the district court's failure to consider the transcript for admission and consequent denial of Defendant's motion to admit it had an impact on the jury's verdict. The district court's failure to review the transcript in redacted

form was harmless.

**B.      The District Court Erred in Failing to Conduct an in Camera Review of CYFD Records Sought by Defendant**

**{24}**      Defendant next argues that the district court erred by declining to order disclosure of CYFD records related to allegations by Victim before those leading to this case. Defendant made a motion to compel the State to provide the materials because they were potentially exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). The State opposed the motion and argued that: (1) the district attorney's office "is not the custodian of any CYFD records" and CYFD is not part of the "prosecution team"; (2) the records were confidential under NMSA 1978, Section 32A-4-33 (2009); and (3) the records were not relevant.

**{25}**      The district court denied the motion, stating that it was premature because Defendant had not subpoenaed CYFD to get the records. Defendant served CYFD with a subpoena duces tecum, but CYFD refused to comply immediately. Instead, pursuant to Section 32A-4-33, it requested additional information from which to determine if Defendant was entitled to the records. Section 32A-4-33(B)(16) permits release of records only to parties in the case or to "any other person or entity, by order of the court, having a legitimate interest in the case," and Section 32A-4-33(C) permits disclosure of limited records to "parent[s], guardian[s] or legal custodian[s] whose child has been the subject of an investigation." Defendant had no right to CYFD records under Section 32A-4-33(C) because he was not a parent, guardian, or legal custodian. In addition, Defendant was provided with the only records to which he was entitled as a party to the present charges under Section 32A-4-33(B). Defendant's arguments, therefore, boiled down to whether he had a "legitimate interest" in the records. *See* § 32A-4-33(B)(16).

**{26}**      The State maintained that Defendant "cannot establish relevance for apparent allegations that occurred PRIOR to the instant offense." Defendant argued that "the defense needed to know the complete picture about the earlier allegations and interviews" and "that it was relevant whether [Victim] learned during those multiple interviews how to answer in such a way that her allegations would be given credence." He argued that the CYFD records were relevant to "the credibility of the witness that the State must rely on in order to proceed to trial, [Victim]." The district court found that Defendant had a legitimate interest "only as to incidents related to [Defendant] and the charges alleged in the criminal information" and declined to order disclosure of any records not related to the present charges. The district court did not state the basis for this finding in either the order for disclosure or at the hearing on the matter.

**{27}**      "A trial judge's denial of a defendant's discovery requests will be reviewed according to an abuse of discretion standard." *State v. Bobbin*, 103 N.M. 375, 377, 707 P.2d 1185, 1187 (Ct. App. 1985). In order for an abuse of discretion to be reversible, the defendant must demonstrate prejudice. *State v. Desnoyers*, 2002-NMSC-031, ¶ 25, 132

8

N.M. 756, 55 P.3d 968, *abrogated on other grounds as stated in State v. Forbes*, 2005-NMSC-027, 138 N.M. 264, 119 P.3d 144. The primary issue argued below was whether the records of allegations by Victim before those in the instant case were material to the charges or Defendant's defense. When a defendant has demonstrated "circumstances that reasonably indicate that records may contain information material to the preparation of the defense[,]" *Ortiz*, 2009-NMCA-092, ¶ 28, then "[t]he proper procedure to determine relevance is . . . in camera review [of the documents]." *State v. Gonzales*, 1996-NMCA-026, ¶ 20, 121 N.M. 421, 912 P.2d 297. When, as here, the materials sought are protected by statute, "[i]n camera review of confidential information represents a compromise between the intrusive disclosure of irrelevant information on the one hand and the complete withholding of possibly exculpatory evidence on the other." *State v. Luna*, 1996-NMCA-071, ¶ 13, 122 N.M. 143, 921 P.2d 950.

**{28}**  "A general assertion that inspection of the records is needed for a possible attack on the victim's credibility is insufficient to [trigger in camera review]." *Id.* ¶ 9. But Defendant is not required "to know or show in advance that the records will actually contain helpful information." *Ortiz*, 2009-NMCA-092, ¶ 28; *see* Rule 5-503(C) NMRA (stating that information sought in discovery need not be admissible at trial "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence"). Instead, Defendant must provide a reasonable basis on which to believe that it is likely the records contain material information. *Ortiz*, 2009-NMCA-092, ¶ 28. In *State v. Pohl*, 89 N.M. 523, 524, 554 P.2d 984, 985 (Ct. App. 1976), the Court held that the defendant had made a sufficient showing to require inspection of police personnel records when the "defendant had shown two prior instances of the officer[']s alleged misconduct." In that case, the records of previous misconduct were material to the defense because "the defendant's guilt or innocence [hinged] on whether the jury believe[d] the arresting officer [was] the aggressor." *Id.* Similarly, in *Gonzales*, there was no abuse of discretion when the district court ordered in camera review of mental health records when other records indicated that the victim "had a history of blackouts from alcohol" and the records may have "contained information that [the victim] may have suffered cognitive difficulties which would affect her credibility at trial." 1996-NMCA-026, ¶ 21. The defendant there was charged with criminal sexual penetration and claimed that the sexual encounter was consensual. *Id.* ¶¶ 3, 22. Thus, whether the victim may have blacked out while they were together was material to his defense. *Id.* ¶ 21.

**{29}**  Here, as in *Pohl* and *Gonzales*, Defendant had evidence suggesting that Victim had been interviewed a number of times by CYFD or Oasis and/or had made unsubstantiated allegations of sexual abuse in the past. Victim waved to the camera in the Oasis interview room and stated that she had been there before. Defendant also obtained a summary report of allegations from Victim's mother. This report showed that there had been allegations in 2002, 2003, 2004, 2006, 2008, and 2009 and that Victim had been interviewed about some of the allegations. It also indicated that some of the allegations were found to be unsubstantiated. Finally, since there was no physical evidence of abuse, the State's case rested entirely on the credibility of the witnesses. Thus, Victim's credibility as to both

9

possible false accusations and learned ability to respond to interview questions was material to Defendant's defense. We conclude that Defendant made a threshold showing sufficient to trigger in camera review.

{30} The State points to *Luna*, 1996-NMCA-071, and *State v. Ramos*, 115 N.M. 718, 858 P.2d 94 (Ct. App. 1993), *modified on other grounds by State v. Gomez*, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1 as examples of cases in which this Court found no abuse of discretion where the district court had denied a defendant's motion for release of confidential or privileged documents. These cases are inapposite. In *Luna*, the district court ordered in camera review of the victim's psychotherapy records on motion by the defendant. 1996-NMCA-071, ¶¶ 3-4. The State initially did not object, but then "raised [an] objection that [the d]efendant had made an insufficient showing to justify . . . in camera review on the day of trial." *Id.* ¶ 4. This Court acknowledged that the defendant's bare assertion that "it is likely that [the victim] revealed information to the therapist which may be relevant to issues of her credibility . . . may not have been sufficiently particularized or compelling to justify in camera review[,]" but did not decide this issue. *Id.* ¶ 10 (internal quotation marks omitted). Rather, it held that the district court's order was not an abuse of discretion because the State did not timely object and the defendant was prejudiced by the delay. *Id.* ¶ 11. In *Ramos*, the district court conducted an in camera review of the victim's psychotherapy records and found "that there was nothing in the records that justified their disclosure." 115 N.M. at 721, 858 P.2d at 97. On appeal, the defendant argued that it was error not to order disclosure of the records directly to him because the records "may well [have] contain[ed] evidence of psychotic or hallucinatory behavior relevant to credibility." *Id.* (internal quotation marks omitted). There, the issue was whether the district court erred in its determination that the records were not relevant *after* in camera review. In contrast, here the issue is whether Defendant made a threshold showing sufficient to require in camera review of the records. Neither *Luna* nor *Ramos* addresses this question.

{31} The State next argues that, even if the records sought were material, Defendant "made no showing that the [district] court's refusal to grant him . . . access . . . denied him a defense or . . . fair trial or resulted in prejudice." *See Chacon v. State*, 88 N.M. 198, 199-200, 539 P.2d 218, 219-20 (Ct. App. 1975) ("[N]ondisclosure of items material to the preparation of the defense is not reversible error in the absence of prejudice."). The district court did not order disclosure of the records for in camera review and did not make a finding as to their relevance; consequently, they are not part of the record on appeal. Since we have no basis on which to assess prejudice, we cannot determine that there was no prejudice. *Pohl*, 89 N.M. at 525, 554 P.2d at 986 ("In the absence of a determination of what the files would have shown we cannot hold there was no prejudice.").

{32} We hold that Defendant made a threshold showing of materiality sufficient to require the district court to conduct in camera review. Therefore, the district court erred in ruling that Defendant did not have a legitimate interest in the records of previous allegations without assessing fully the relevance of those records through in camera review of them. We remand for in camera review of the records to determine (1) if any portion of them is

material to the charges or defense and (2) whether exclusion of the records was prejudicial to Defendant. If the answer to both questions is yes, Defendant must be given a new trial. *See Pa. v. Ritchie*, 480 U.S. 39, 58 (1987) (remanding for review of a children and youth services file in camera and stating that if the file contains no "information that probably would have changed the outcome of [the] trial . . . the lower court will be free to reinstate the prior conviction"). We further note that the district court's ruling in this matter will be subject to appeal.

## C.     Defendant Failed to Preserve His Arguments as to the District Court's Grant of the State's Motion in Limine

**{33}**     We turn next to Defendant's argument "that the [district] court's refusal to allow the defense to introduce evidence of [Victim]'s prior CYFD contacts was an abuse of its discretion that resulted in deprivation of his constitutional rights to confrontation and due process of law." The State argues that "Defendant waived this issue for appeal" because he "did not oppose the State's motion [in limine to exclude such evidence]" and that, even if the issue were not waived, prior allegations by Victim were irrelevant. Defendant does not address waiver or preservation of this argument in his briefs. We conclude that this issue is not properly before this Court either because Defendant waived his right to appeal exclusion of the evidence by failing to file a notice of intent to admit the prior allegations as required by Rule 11-412(C) NMRA, or because Defendant failed to elicit a ruling at trial on the admissibility of the prior allegations.

**{34}**     We begin by noting that analysis of whether evidence covered by our "rape shield statute," NMSA 1978, Section 30-9-16 (1993), should be admitted at trial is distinct from our analysis of whether Defendant should have been permitted to obtain that evidence through discovery. *Gonzales*, 1996-NMCA-026, ¶ 11 (stating that Rule 11-412, the evidentiary rule related to the rape shield statute, "clearly governs only the admission of evidence at trial and not pretrial discovery"). Thus, Rule 11-412 does not preclude discovery of the CYFD records of prior allegations by Victim. The rule does, however, govern our analysis of the district court's grant of the State's motion in limine to exclude such evidence and the district court's rulings at trial pertaining to the evidence. *See State v. Payton*, 2007-NMCA-110, ¶¶ 5, 10, 142 N.M. 385, 165 P.3d 1161 (discussing the rape shield statute in the context of CSCM charges and proof of the victim's sexual knowledge prior to the alleged CSCM).

**{35}**     Defendant did not argue against the State's motion in the hearing on the matter. In fact, Defendant stated at the motion hearing that he "had not anticipated soliciting that type of information anyway." Although he also stated that "if it comes up, I guess that will be addressed[,]" the district court reiterated that it should not come up in front of the jury, and Defendant did not object further. The State's motion was predicated on Section 30-9-16(A), which prohibits admission of "evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, . . . unless . . . the evidence is material to the case and that its inflammatory or prejudicial nature

11

does not outweigh its probative value." *See* Rule 11-412(B). The State argued that Defendant had not demonstrated that these conditions were met and that Defendant had not filed a written notice notifying the court of his intent to admit the prior allegations. *See* Rule 11-412(C)(1), (2) ("If the defendant intends to offer evidence under Rule 11-412(B) . . ., the defendant must file a written motion before trial. . . . Before admitting evidence under this rule, the court shall conduct an in camera hearing to determine whether such evidence is admissible."). The district court acknowledged this failure in its oral ruling on the motion and noted both at the hearing and in its order that "if new issues arise during trial, the [district c]ourt will review those issues at that time." *See Proper v. Mowry*, 90 N.M. 710, 715, 568 P.2d 236, 241 (Ct. App. 1977) (noting that a ruling on a motion in limine is "without prejudice to the right to offer proof [and possible introduction of the evidence] during the course of the trial").

**{36}** In spite of this acknowledgment by the district court, Defendant never filed the required notice under Rule 11-412(C) or sought a hearing on admissibility of the prior allegations by Victim. This failure precluded admission of this evidence. *State v. Johnson*, 1997-NMSC-036, ¶ 20, 123 N.M. 640, 944 P.2d 869 (stating that during the in camera hearing, the movant may "inform the [district] court of the relevant facts and circumstances, make the arguments of relevancy, and explain the respective positions on balancing. In conducting that inquiry, the [district] judge must depend on the moving party or parties to offer proof and argument in support of the ruling sought").

**{37}** Even if Defendant's conduct vis á vis the motion in limine or Rule 11-412(C) did not constitute waiver, he failed to preserve the issue for appeal. In order to preserve an issue for appeal, Defendant must make a timely objection that apprises the district court specifically of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. In addition, "it must appear that [the] appellant fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). At trial, Defendant sought to ask questions of Victim about why she lived with her grandmother in the year before the current allegations. In addition, he questioned the CYFD services provider and the CYFD investigator about why they knew Victim before the investigation of the alleged incidents. He also asked the forensic interviewer why Victim had waved to the camera in the interview room. In each case, the State objected on grounds that the district court had already ruled that reference to "[V]ictim's prior sexual conduct, to include allegations of prior sexual abuse" was excluded. At the beginning of the second day of trial, the district court reiterated its ruling on the motion, stating that "prior allegations with CYFD are not to be elicited or brought in." In response, Defendant argued that the Defendant's statements were hearsay and the best evidence rule required admission of the audio recording of the interview. These arguments at trial related to the admissibility of the audio recording or transcript of Defendant's police station interview, not to the admissibility of Victim's prior allegations. Because Defendant did not file notice of intent to admit Victim's prior allegations and did not object to the Court's ruling on the exclusion of prior allegations at trial, the district court was never alerted to his arguments regarding admission

12

of the evidence so as to make "an intelligent ruling thereon." This issue was not preserved. *See Woolwine*, 106 N.M. at 496, 745 P.2d at 721.

**D.**   **Sufficient Evidence Supported the Jury's Findings That Defendant Committed Two Counts of CSCM**

**{38}**   "[A] sufficiency of the evidence question involves a two-step process." *State v. Armendariz-Nunez*, 2012-NMCA-041, ¶ 16, 276 P.3d 963, *cert. denied*, 2012-NMCERT-003, ___ P.3d ___. "Initially, we view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[.]" *Id.* The next step requires that we "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{39}**   The jury was instructed with identical instructions for both counts as follows:

> For you to find [D]efendant guilty of criminal sexual contact of a child under the age of [thirteen] as charged in Count 1, [replaced with Count 2 in second instruction], the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.   [D]efendant touched or applied force to the unclothed buttocks and/or vagina of [Victim];
>
> 2.   [Victim] was [twelve] years of age or younger;
>
> 3.   This happened in New Mexico on or between January 1, 2009[,] and February 12, 2009.

**{40}**   We have examined the evidence in detail and conclude that it is sufficient to permit retrial if the district court concludes that one is necessary following its in camera review of the records of previous allegations. Although most of the evidence related to February 11, 2009, Victim also testified that Defendant had touched her inappropriately prior to that incident. Victim testified that February 11, 2009, was not the only time that Defendant had touched her "private parts" and that it had started when her mother began work at Burger King in June. Defendant's testimony also supported an inference by the jury that inappropriate touchings had occurred on more than one occasion in the specified time period because Defendant stated during cross-examination that he had told Detective Moore in the interview that "the inappropriate things had been going on between [him and Victim] about a week." Detective Moore also testified that Defendant said he had touched Victim inappropriately "twice within the last week."

**{41}**   Under our standard of review, sufficient evidence was presented for the jury to

conclude that Defendant "touched or applied force to the unclothed buttocks and/or vagina" of Victim both on the night of February 11, 2009, and on another occasion between January 1, 2009, and February 12, 2009. The lack of testimony pinpointing a specific date on which the other incident of CSCM occurred does not preclude a finding by the jury that two incidents of touching occurred based upon the evidence presented. *See State v. Altgilbers*, 109 N.M. 453, 471, 786 P.2d 680, 698 (Ct. App. 1989) (stating that "[n]o juror need have a precise day in his or her own mind in order to vote for conviction" for purposes of a sufficiency of the evidence analysis and concluding that sufficient evidence supported verdicts in spite of the lack of evidence of specific dates of the occurrence of criminal sexual acts). Accordingly, should a new trial be required following in camera review of the CYFD records, Defendant's right to be free from double jeopardy will not be violated by retrial on both counts of CSCM.

**E.      The District Court Did Not Err in Denying Defendant's Motion to Suppress**

**{42}**    The district court denied Defendant's motion to suppress his statements at the February 18 interview at the police station. Defendant argues first that "he felt coerced in [the] interview" and then "that the [district] court erred in finding that there was a proper waiver of his rights to remain silent[ during the police interview on February 18] and that this error . . . require[s] retrial." He cites to cases addressing a suspect's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The State argues that Defendant was not in custody during the questioning and that the questioning was not "the type of interrogation requiring *Miranda* warnings."

**{43}**    It is not entirely clear whether Defendant's argument is that his statements were involuntary (because they were coerced) and, therefore, that they violated his right to due process under the Fourteenth Amendment, or that his statements violated his Fifth Amendment rights because he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. *See State v. Fekete*, 120 N.M. 290, 298, 901 P.2d 708, 716 (1995) ("A claim that the police coerced a statement requires a different analysis than a claim that an accused voluntarily waived his or her Fifth Amendment protections under *Miranda*."); U.S. Const. amends. V and XIV; *see also Miller v. Dugger*, 838 F.2d 1530, 1537 (11th Cir. 1988). In either case, we conclude that the district court did not err in denying Defendant's motion to suppress.

**{44}**    We first address whether Defendant's due process rights were violated. We review whether a statement was voluntarily given by assessing the totality of the circumstances. *State v. Munoz*, 1998-NMSC-048, ¶ 23, 126 N.M. 535, 972 P.2d 847. In order to determine that a statement was involuntary, we must also conclude that the statement was the result of police misconduct. *Id.* ¶ 21. "[I]ntimidation, coercion, deception, assurances, or other police misconduct . . . constitutes overreaching . . . [and] requires that the [statements] be excluded." *Id.* ¶ 23. Here, Detective Moore asked Defendant during the February 17 interview to come to the police station the next day. He stated, "I would like for you to come to the [p]olice [d]epartment. Not . . . it don't [sic] have to be right now but tomorrow would

14

be good." Defendant responded, "Tomorrow, what time?" When Defendant stated that he didn't have a way to get to the police station, Detective Moore offered to pick Defendant up or have someone else pick him up. Defendant responded, "That will be fine." This conversation occurred while Defendant, Detective Moore, and Investigator Pacheco were standing in front of Defendant's home.

**{45}** Defendant was transported to the police station by another detective. He testified that the detective placed his duty weapon on his lap during the ride. The detective testified in contrast that he did not remember where exactly his weapon was during the ride, but that "it would not have been in plain sight." At the police station, Detective Moore interviewed Defendant while Investigator Pacheco observed. Detective Moore began by telling Defendant "You have not been charged with anything. You are not under arrest, in fact, . . . basically you are free to go anytime that you want. . . . [Y]our rights do apply, even though you are not in custody or anything, you still have the right to remain silent." He then told Defendant he would "read . . . the rights that you hear on [TV]" and recited the *Miranda* warnings. Defendant indicated that he understood. Detective Moore presented Defendant with the waiver form, reviewed it orally, and stated, "Again, if you don't want to talk to me that is fine, that's[,] you know, well within your rights, and you are free to go at any time." Defendant responded, "[O]K," and signed the waiver form. The interview lasted approximately one hour. During the interview, Detective Moore told Defendant that Victim was not lying and implied that Defendant was not being truthful. Nonetheless, nothing in the way the interview was conducted amounts to "intimidation, coercion, deception, assurances" or overreaching such that Defendant's due process rights were violated.

**{46}** We turn next to whether Defendant's Fifth Amendment rights were violated. "[W]e review the [district] court's findings of fact for substantial evidence and review de novo the ultimate determination of whether a defendant validly waived his or her *Miranda* rights prior to police questioning." *State v. Barrera*, 2001-NMSC-014, ¶ 23, 130 N.M. 227, 22 P.3d 1177.

**{47}** As a preliminary matter, we note that *Miranda* warnings are required only when a suspect is in custody and under interrogation. *Smile*, 2009-NMCA-064, ¶ 24. The State argues that these conditions were not present. We do not address this issue because even if we assume without deciding that Defendant was interrogated while in custody, we conclude that Defendant's Fifth Amendment rights were not violated. Defendant received *Miranda* warnings from Detective Moore orally and in writing. Our inquiry, therefore, is whether he "knowingly, intelligently, and voluntarily waived his . . . constitutional rights under *Miranda*." *Barrera*, 2001-NMSC-014, ¶ 22. This inquiry involves two components. *Fekete*, 120 N.M. at 301, 901 P.2d at 719.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned

15

and the consequences of the decision to abandon it.

*Id.* (internal quotation marks and citation omitted). We have already addressed the first component. "'[V]oluntariness' in the context of a *Miranda* waiver means the same thing as 'voluntariness' in the due process context, i.e., freedom from official coercion." *Miller*, 838 F.2d at 1538. Having determined that there was no official coercion in the arrangements for or conduct of the interview, we conclude that Defendant's waiver of his rights under *Miranda* was voluntary. *See Fekete*, 120 N.M. at 301, 901 P.2d at 719 (stating that since the due process analysis revealed that there was no evidence of intimidation or coercion, the "inquiry focuses on the second element of the waiver").

**{48}** The remaining question is "whether [Defendant] was fully aware both of the nature of the rights he waived and the consequences of the waiver." *Id.* Defendant had several opportunities to indicate that he did not understand the nature and consequences of the waiver. After Detective Moore read the rights to Defendant, he asked, "Do you understand all that?" Defendant responded, "Yep." Detective Moore then reviewed the waiver form, on which were printed the *Miranda* rights. He explained, "[T]his is a wa[iv]er just saying that you read the statement about my rights and I understand what my rights are" and "by signing this, this is just signing a wa[iv]er saying that you understand your rights and you are willing to talk. Okay?" Defendant responded, "[O]K." On appeal, Defendant does not direct us to specific evidence that his waiver was not knowing and intelligent. Thus, we conclude that the district court did not err in denying Defendant's motion to suppress. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318 ("The question is whether the [district] court's decision is supported by substantial evidence, not whether the court could have reached a different conclusion.").

## F.    Cumulative Error

**{49}** "Under the doctrine of cumulative error, this Court must reverse a conviction when the cumulative impact of the errors [that] occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *Baca*, 120 N.M. at 392, 902 P.2d at 74 (alteration in original) (internal quotation marks and citation omitted). "Several errors that would in themselves be harmless may together create reversible error if they deprived the defendant of a fair trial." *State v. La Madrid*, 1997-NMCA-057, ¶ 24, 123 N.M. 463, 943 P.2d 110. "This doctrine is to be strictly applied, and [Defendant] cannot invoke it if the record as a whole demonstrates that he received a fair trial." *State v. Woodward*, 121 N.M. 1, 12, 908 P.2d 231, 242 (1995), *abrogated on other grounds as recognized in State v. Granillo-Macias*, 2008-NMCA-021, 143 N.M. 455, 176 P.3d 1187.

**{50}** Defendant argues that "the cumulative net effect of these errors was a denial of a defense." The district court's failure to review CYFD's materials in camera was error, but that error is reversible only if it was prejudicial. If so, Defendant will receive a new trial. In addition, any error in failing to admit the transcript of the police interview was harmless. Defendant's other assertions of error are not only not reversible, but are unfounded. Even

16

in the aggregate, they did not deprive Defendant of a fair trial.

**CONCLUSION**

**{51}** We remand for an in camera review of the CYFD records Defendant sought through discovery consistent with this opinion.

**{52}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**MICHAEL E.  VIGIL, Judge**

**Topic Index for _State v. Garcia_, No. 30,852**

**APPEAL AND ERROR**
Cumulative Effect
Harmless Error
Prejudicial Error
Preservation of Issue for Appeal
Remand
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Due Process
Miranda Warnings

**CRIMINAL LAW**
Sexual Offenses

**CRIMINAL PROCEDURE**
Deposition and Discovery
Due Process
Motion in Limine
Motion to Suppress
Prejudice

**EVIDENCE**
Exculpatory Evidence
Writing Used to Refresh Memory